State of Maine *vs.* Joseph E. Boardman.

*House of ill-fame—how proved to be so. Superior court.*

On trial of an indictment for keeping a house of ill-fame under R. S., c. 17, §§ 1 and 2, testimony as to the reputation of the house is not admissible. It is sufficient if the evidence shows that the house was in fact used as a house of ill-fame, and evidence of its reputation has no legal tendency to establish that fact.

In such a case evidence of the reputation of the women frequenting the house and of the character of their conversation and acts in and about it is admissible.

It is no cause for avoiding a verdict that the January term of the superior court, designated for the trial of criminal cases, was adjourned from the second day of February to the seventeenth day of that month, and that the February term was held between these dates; and a plea setting out these facts was properly overruled.

State *v.* Boardman.

On exceptions.

Indictment found at the January term, 1874, of the superior court for this county, under R. S., c. 17, § 1, for maintaining a nuisance, charging that the respondent on the first day of January, 1873, at Deering, &c., and on divers other days and times between that day and the day of finding of the indictment "did keep a certain house of ill-fame, then and there resorted to for the purpose of prostitution and lewdness, by the consent and with the knowledge of the said Joseph E. Boardman, against the peace," &c.

Before proceeding to trial the respondent filed a "motion or plea" setting forth that he was "not bound by law to answer to said indictment, and proceed to the trial thereof, because he says that the adjournment of the January term of this [the superior] court from the second day of February instant to this day, as will appear by record thereof was not authorized by law, and that this court is now sitting illegally and without right. Wherefore he prays that he may not be required to plead to this indictment, but may be permitted to go thereof without day."

The presiding justice overruled the same, and the respondent excepted.

By the act of 1868, c. 151, establishing said court, jurors may be required to serve therein for one or two terms, and either one or two juries may be in attendance as the justice may determine, according as, in his view, public necessities and business may require. The January term is one of those designated in the act for the trial of criminal cases and at these terms precedence is given to these over civil causes. The terms of this court are holden upon the first Tuesday of each month for nine months of the year. The January term, 1874, commenced on the first Tuesday of that month, and the February term also on the first Tuesday of February. Before the time for commencing the latter term arrived, to wit, on the second day of February, 1874, the January term was adjourned to the seventeenth day of the same February, and the February civil term was held between these dates. Dur-

ing the earlier part of the January term two juries were in attendance, one of which had attended at the preceding December term. On the second day of February, just before the aforesaid adjournment of the January term, those jurors who had served in December were excused from further attendance by the presiding justice, and only those originally summoned for the January term —seventeen in number—were retained and were present when this trial began. The respondent's counsel objected to proceeding to trial, upon the ground that he would be restricted in his right to draw a jury for the hearing of the cause from the full number constituting the juries for said January term; but the court overruled the objection and he excepted.

The defendant was allowed his statute right of challenge, and the panel was obtained before the list of jurors in attendance was exhausted. The trial then proceeded upon a plea of not guilty. The first witness whose testimony is reported in the exceptions testified that he was a hackman and had several times within the preceding year carried men and women out to the Brewer house, that being the name of the place kept by Mr. Boardman; that he did not know the class of women, nor their names, but they were called a little fast; that sometimes the men who hired his hacks had their own women with them, and at others perhaps he would find them, finding that class that would like to go and have a good time and a good supper. Other testimony, of a more positive character, was introduced as to the character of the girls who visited the house, and the purpose for which they went there, their conduct about the house and in its vicinity, soliciting passers-by to go in with them, &c., &c. A witness, called by the prosecution, was then asked if he knew the general reputation of the house as to its being or not being, a house of ill-fame, resorted to for the purposes of lewdness and prostitution; to this inquiry the defendant objected, but the court ruled it admissible to establish the general reputation of the house as one of ill-fame, resorted to for the purposes of prostitution and lewdness; and the same question was put to and answered by several other

witnesses. After stating, in his charge, that the language of the indictment was not technical but easily understood, and that the only question was as to the truth or falsity of the charge it contained, he remarked that, in these cases, three classes of testimony were admissible; first, testimony tending to show specific or particular acts of lewdness and prostitution upon the premises referred to; second, testimony tending to show the general reputation for chastity of the men and women accustomed to frequent the house; third, testimony tending to show the general reputation of the house itself as to its being resorted to for the purposes of prostitution and lewdness; adding, "it is only incumbent upon the government to prove that this was a house of ill-fame resorted to for the purposes of prostitution and lewdness, and it is not necessary for the government to prove in addition the reputation of the house. That is to say, if the government has made out to your satisfaction, beyond a reasonable doubt, that this was a bawdy house, resorted to for purposes of lewdness and prostitution, the whole case is made out, without proof that it had the reputation of being so. The testimony as to its reputation is admissible only so far as it bears on the question whether or not it was in fact so; that is to say, it is only admissible as tending to prove that the house was in fact a house of ill-fame, resorted to for the purposes of lewdness and prostitution." The respondent was found guilty. To the ruling admitting the testimony aforesaid, the respondent excepted.

*Bradbury & Bradbury* for the respondent.

The act of 1868, establishing the superior court, c. 151, § 6, provides that terms shall be held upon the first Tuesday of every month except June, July and August; while c. 216 of the same year provides that its criminal business shall be transacted at its January, May and September terms. Can these terms be extended beyond the time and terms devoted by statute to civil business exclusively? If so, where is the limitation? How many terms can be made to overlap each other?

R. S., c. 82, § 71; provides that when a justice excuses jurors he

shall issue a venire for others to fill their places. So if twelve were excused, twelve new ones should have been summoned, and from such whole number the respondent had a right to have the jury drawn by which he was to be tried. R. S., c. 82, § 66.

Testimony of conduct and conversation in the vicinity of the house, out of the defendant's presence, was improperly admitted. *Commonwealth* v. *Harwood*, 4 Gray, 41.

General reputation is not admissible to prove the fact that the house is one of ill-fame; even in Connecticut where under a statute like ours it is held that the fact and the reputation must both be proved in order to convict—but evidence of the repute has no tendency to prove the fact. *Cadwell* v. *State*, 17 Conn., 467; *Commonwealth* v. *Stewart*, 1 S. & R., 342; 2 Bishop's Crim. Proc., §§ 91 and 92.

*Charles F. Libby*, county attorney, for the state.

The determination as to the jury to try the cause and who shall be excused is discretionary with the justice. *Ware* v. *Ware*, 8 Maine, 42; Act of 1868, c. 151, § 6.

The term "house of ill-fame" is synonymous with "bawdy-house." *McAllister* v. *Clark*, 33 Conn., 92; 1 Bishop's Crim. Law, § 1083; 2 Archbold's Crim. Prac. and Plead., 1007.

It is so employed in our R. S., c. 17, § 1; "all places used as houses of ill-fame" are declared nuisances.

Evidence of the bad reputation of the house, as being a bawdy-house, is admissible. *State* v. *Main*, 31 Conn., 575. The defence rely upon *Cadwell* v. *State*, 17 Conn., 422; that was a decision in favor of the state in support of a ruling in the court below, and does not apply under our statute, as is clear from the language, "used as a house of ill-fame," &c. R. S., c. 17, § 1. See the later case in Connecticut. 31 Conn., 575. And in the last volume of Connecticut reports is the case of *State* v. *Morgan*, 40 Conn., 46, where that court, in speaking of one indicted under their statute, for keeping a place in which it was reputed that intoxicating liquors were sold without license, say, "The reputation here intended grows out of such indications as convince men

of ordinary sagacity that such liquors are in fact kept in these places for sale. It comes from persons passing and repassing, who see there the ordinary concomitants of drinking saloons. They see, perhaps, the intemperate loitering before them; or persons going in apparently sober and coming away intoxicated. They see casks, decanters, jugs, &c., labeled with the names of various kinds of intoxicating liquors; and, indeed, everything that usually attends drinking saloons. Such persons communicate their knowledge to others, and in a short time these places have the reputation of being establishments where such liquors are kept for sale. The reputation, therefore, is founded in fact; that is, it is based upon, or grows out of, the fact, that such liquors are kept for sale." The closing sentence of that opinion is, "for if it was the honest opinion of the neighborhood that the defendant kept such liquors in his establishment for sale, it must have had its origin in evidence that satisfied the minds of observers that such liquors were in fact kept for sale." The same reasoning is equally applicable to the ill-repute of a house arising from the external appearances surrounding it.

In very numerous cases in this state, Massachusetts, and elsewhere, it has been held that evidence of these external appearances about an establishment is admissible to show the intent with which liquors there found and seized were kept. It is equally admissible to show the lewd purpose for which a house is kept; so the evidence of the character and conduct of the females living at and visiting the Brewer House was properly received. *Commonwealth* v. *Kimball*, 7 Gray, 328.

The three classes of testimony enumerated by the judge are admissible. 2 Bishop's Crim. Proc., §§ 112 to 117; 3 Wharton's Crim. Law, § 2390; 2 Archbold's Crim. Prac. and Plead., (7th ed.,) 1008.

DICKERSON, J. The defendant is indicted for keeping a house of ill-fame, resorted to for the purposes of prostitution and lewdness. The offence charged is that of a common nuisance. The language of the statute is as follows: "All places used as houses

of ill-fame, resorted to for lewdness or gambling, for the illegal sale or keeping of intoxicating liquors, are common nuisances." R. S., c. 17, § 1. Section 2 of the same chapter makes "any person keeping or maintaining such nuisance," liable to fine or imprisonment in the county jail.

The terms "house of ill-fame" and "bawdy house" are synonymous. "A bawdy house," says Bouvier, "is a house of ill-fame, kept for the resort and unlawful convenience of lewd people of both sexes." So Archbold defines a bawdy house to be a house kept for the resort and convenience of lewd people of both sexes. 1 Bouvier's Law Dic., h. t.; 2 Archbold's Crim. Prac. & Plead., 1667; 1 Bishop's Crim. Law, (5th ed.,) 1083; *McAllister* v. *Clarke*, 33 Conn., 92.

The common signification of the word corresponds with its technical meaning. "A bawdy house," says Worcester, "is a house used for lewdness and prostitution; a brothel." The idea conveyed by the term "house of ill-fame," or its synonym "bawdy house" is that of a house "resorted to for the purposes of lewdness and prostitution." A "house used as a house of ill-fame" is a house thus resorted to; it cannot be so used unless it is thus resorted to, and if it is resorted to for such purpose it is "a house used as a house of ill-fame," in the purview of the statute, though it may not have that reputation. The phrase "resorted to for lewdness," contained in the statute does not qualify, enlarge or change the meaning of the preceding clause in this case; the statute, in this case, has the same meaning and application without as with that phrase.

In order to make out the offence charged in the indictment under our statute, it is necessary to establish two things: first, that the house was used as a house of ill-fame; and, second, that the defendant kept it. The gist of the offence consists in the use, not in the reputation of the house. Its reputation for lewdness and prostitution may be ever so clearly established, and yet if the evidence does not show that it was in truth used for those purposes, the first element in the offence is not proved; but if that is made out, it is immaterial what the reputation of the house was, or whether it

State v. Boardman.

had any. The reputation of the house, under our statute, makes no part of the issue. Testimony as to its reputation has no tendency to establish the issue that it was in fact used as a house of ill-fame, and is inadmissible as mere hearsay evidence. On trial of an indictment for a nuisance, it is not admissible to show that the general reputation of the subject of the nuisance charged was that of a nuisance. 2 Wharton's Crim. Law, § 2367; 3 Greenl. on Ev., (6th ed.,) 186 ; 2 Bishop's Crim. Proc., § 91. The judge in the court below erred in admitting such evidence.

We are aware that the court in Connecticut, in *Cadwell* v. *The State*, 17 Conn., 467, held that to support such an information, under the statute of that state, it is necessary to prove that the general reputation of the house was that of a bawdy house, and that it was such in fact. To establish the first proposition the court in that case admitted evidence of the reputation of the house, but distinctly say that such testimony would be clearly inadmissible to prove that the house was in fact a house of ill-fame. We have seen that under the phraseology of our statute it is not necessary to prove the reputation of the house ; and the case of *Cadwell* v. *The State*, 17 Conn., 467, thus becomes authority for excluding evidence of reputation in this case. 2 Bishop's Crim. Proc., § 91.

Evidence of the reputation of the women frequenting the house and the character of their conversation and acts in and about it is competent in such cases, as the judge ruled. *Commonwealth* v. *Kimball*, 7 Gray, 328 ; *Commonwealth* v. *Gannett*, 1 Allen, 8.

The judge also properly overruled the defendant's plea. *Ware* v. *Ware*, 8 Maine, 42 ; Public Laws of 1868, c. 151, § 6.

*Exceptions sustained.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and PETERS, JJ., concurred.

The chief justice and concurring justices appear also to have assented to this note upon the case by

PETERS, J. The house must be proved to be a house of ill-fame by facts and not by fame.