## Cox *v.* The State.

EVIDENCE.—*Weight of Evidence and Credibility of Witness for the Jury.*—A court or jury trying a cause hear the testimony of witnesses from the living voice, with whatever peculiar accent, emphasis, or intonation it may have, and see the witness, his countenance, looks, expression of face, manner, readiness or reluctance, and the many nameless indices of truth or falsehood, which it is impossible to put into words; and when the verdict of a jury has received the approval of the court below, and the sole question is the weight of evidence, though the testimony may be contradictory, and not completely satisfactory, the Supreme Court will not disturb the verdict.

From the Boone Circuit Court.

*C. C. Galvin* and *C. S. Wesner,* for appellant.

*C. A. Buskirk,* Attorney General, and *R. D. Doyle,* for the State.

BIDDLE, J.—The appellant, with William L. Randall, was indicted for stealing tobacco and whiskey, and convicted of grand larceny. The proper steps were taken to appeal the case to this court. The points made here are:

1. Refusing to quash the indictment.
2. Insufficiency of the proof.
3. Newly-discovered evidence.

The indictment is good. It was not error to refuse to quash it.

As to the sufficiency of the evidence, the property stolen, its value, ownership, venue, and felonious taking, are clearly proved. The complicity of the appellant with the larceny is the difficult question in the case. As to that point, the evidence is as follows:

William B. Gibson testified: "That the tobacco had been placed in a fodder-shock on his farm, in the night, from the fact that he found some of the tin-foil that was placed between the layers of tobacco, in said fodder-shock; a day or two after he, as constable, had a search warrant for the goods, and found them in the possession of William Randall; that some days afterwards he arrested the defendant, Cox, and was susprised at Cox being mixed up in the affair; asked him, defendant, how he became implicated in the matter, and defendant Cox said that he did not know; that he was drunk, and out with the boys."

Robert Yond testified: "That when the defendant was arrested and brought to his office for examination, he asked defendant how he became implicated in the affair, as he was much surprised in hearing of Cox being implicated; Cox told him he was innocent, and did not know how it was; he was drunk up there with the boys."

Marcus Orear testified: "That on the night of the alleged offence, he and defendant, together with William Randall, David Gazaway, and George Jameson, broke in and entered cars and stole tobacco and whiskey, and took it and concealed

it in the hands of William Randall; that Cox and Gazaway carried the goods through the house by the way of the railroad; that he and Randall went round through town; that Cox took the tobacco off the car and put it in a corn-shock on William Gibson's farm; that he drew the whiskey out of the barrel, and handed the keg out of the car to the others with him; that he had appeared and testified as a witness on the trial of William L. Randall, for the same charge, the last term of this court, at which he, said Orear, plead guilty, and that he was now in the penitentiary on the same charge; that he swore, at the last term of this court, that Cox and Randall had no hand in the stealing of said goods, and knew nothing about it; that he, said Orear, Gazaway, Jameson, and two strangers did the stealing, and Randall and Cox were not with them; that after he was first arrested he made oath before Esquire Yond that the defendant, Cox, did not have anything to do with the matter, and had no knowledge of the affair." On being asked now why he testified to the contrary, he said that he thought he would come back and tell the truth; that he had never communicated his intentions so to do to any person; had not been requested by any one to do so; did so of his own volition; had not been advised by any one to have Cox arrested; was told by James Evans, one of defendant's attorneys, that if he would swear that said Randall was not guilty, his (Orear's) grandfather would give him, Evans, fifty dollars, and that he would get a reprieve for Orear in six weeks.

The appellant being sworn, in his own defence, said: "That on the night of the alleged stealing of the said goods, he was at home all night; knew nothing of the larceny; had nothing to do with it; had no thought of his being suspicioned or implicated till his arrest; has no remembrance of statements made by Gibson and Yond; had no intention at any time to make such statements, from the reason that he well knew all the time that he was innocent, and did not make such statements; that he did not know the boy Orear; never saw him but once before, when he got in his way, when he, defend-

ant, was at work; told him to stand aside; was the only time he ever spoke to him."

James B. Evans testified: "That he never made any such statements, as Orear said he did, in reference to attempting to induce him, Orear, to swear in Randall's favor, or anything of the kind whatever."

Joseph Sanders, called in rebutting, said: "He was in jail where Cox, Randall, and Orear were; that he heard James B. Evans say to Orear, that if he would swear that Cox and Randall had no hand in the larceny, James Brush would give him, Evans, fifty dollars, and he would have him reprieved in six weeks."

There is no other evidence in the record touching this point. In considering the weight of testimony by this court, it must be remembered that such evidence comes before us merely in written words; while the court and jury trying the cause have it from the living voice, with whatever peculiar accent, emphasis, or intonation it may have; and that they see the witness, his countenance, looks, expression of face, manner, readiness, or reluctance, and the many nameless indices of truth or falsehood, which it is impossible to put in words. A statement of facts in words, though testified to by different witnesses, of various degrees of credibility, comes to us with the same weight, while to the court and jury their weight would be, in some instances, the full import of the words, and in others scarcely worth consideration. Hence it is that the credibility of a witness is a question solely for the jury, they being the triors of fact; and the presumption in this court must be that they understood their duty, and performed it. And, should they fail to understand or perform their duty, the court that presides over them has a far better opportunity to correct their errors than it is possible for us to have, who sit merely as a court of appeal; and when the verdict of a jury has received the approval of the court below, and the sole question in the case is the weight of evidence to sustain it, we lay our hands upon the judgment with great reluctance. There must be some clear defect, some link gone or too weak to bind

the chain of facts, or we cannot disturb it. Keeping these rules in view, we examine the case before us.

The main evidence, in this case, to connect the appellant with the larceny is the testimony of an accomplice, who pleaded guilty to the same crime; and while it is true that a jury may convict solely upon the testimony of an accomplice, it is a rule that should be carefully guarded. The witness, in some degree, is both supported and impeached. He is supported as to the place where the stolen goods were found, and impeached by his own contrary statements as to the connection of the appellant with the larceny. There seems to have been, however, a greater motive to prevaricate in his first statements, as there is some evidence tending to show that the hope of executive clemency had been held out to him, than there was at the time he testified on the last trial. He is also contradicted as to the promise of such clemency, and the witness who contradicts him is also contradicted by another witness. He is somewhat supported by the wavering and confused statements of the appellant when first confronted with this charge, and again contradicted by his testimony on the trial; and, while the first statements of the appellant and his testimony are in serious conflict, they also rest upon different grounds. He is also contradicted by other witnesses. All of these conflicting statements were before the jury, under the eye of the court. The jury found the verdict upon the evidence, and the court has sanctioned it by its judgment; and, though the evidence does not completely satisfy us, we can find no error in the law, and know of no judicial rule by which we can reverse the judgment pronounced below.

The alleged newly-discovered evidence was merely stated in an affidavit, which was not properly made a part of the record; we cannot, therefore, notice the point.

The judgment is affirmed.