Doles *v.* The State.

No. 11,390.

## DOLES *v.* THE STATE.

CRIMINAL LAW.—*Sickness of Juror.—Discharge of Jury.—Jeopardy.—Constitutional Law.*—The sickness of a juror, and his consequent inability to sit during the trial of the cause, is a sufficient cause for the discharge of the jury before the return of a verdict, and for the issue of a *venire de novo* at the same or a subsequent term; and, in such case, the defendant has not been in jeopardy, within the meaning of that word, as used in either the State or Federal Constitution.

SAME.—*Murder.—Dying Declarations.—Preliminary Proof.—Discretion of Court.*—Where the defendant is charged with murder, and the State, on the trial, proposes to put in evidence the dying declarations of the deceased, and, to that end, offers the necessary preliminary proof to show the court that the declarations were made by the deceased while *in extremis* and under a solemn sense of his impending dissolution, it is in the discretion of the trial court whether it will allow the State to introduce such preliminary proof in the presence and hearing of the jury, or will send the jury out during the introduction of such proof.

SAME.—*Declarations of Defendant.—Res Gestæ.*—The statements or declarations of the defendant, not made during but a short time after the transaction, in regard to the conduct of the deceased at the time, are not admissible in evidence as a part of the *res gestæ.*

SAME.—*Dying Declarations.—Credibility and Weight.*—The caution and care with which dying declarations should be received and scrutinized are questions for the trial court upon the preliminary proof; but when such declarations are received and admitted, their credibility and weight as evidence are the principal questions for the jury.

SAME.—*Misconduct of Jury.—Bailiff's Presence in Jury Room.—Cause for New Trial.—Counter Affidavits.—Case Explained.*—Ordinarily, the mere presence of the jury bailiff in the jury room during their deliberations upon their verdict, when shown by affidavit, is such misconduct of the jury as will constitute a good cause for granting a new trial; but where, in a criminal cause, such misconduct is so explained and qualified by counter affidavits as to show that the defendant was not injured or harmed thereby, and the trial court so decides, the Supreme Court will respect such decision, and will not reverse the judgment on account of such misconduct. *Rickard* v. *State*, 74 Ind. 275, explained.

From the Tipton Circuit Court.

*D. Waugh, J. P. Kemp, R. B. Beauchamp* and *G. H. Gifford,* for appellant.

*C. C. Shirley,* Prosecuting Attorney, *J. W. Kern* and *J. A. Swoveland,* for the State.

HOWK, J.—In this case, an indictment was duly returned by the grand jury of Tipton county into the court below, wherein it was charged, in substance, that the appellant George Doles, on the 28th day of February, 1882, in Tipton county, " did then and there unlawfully, feloniously, wilfully, purposely, and with premeditated malice, unlawfully kill and murder James P. White, by then and there unlawfully, feloniously, purposely, wilfully, and with premeditated malice, cutting, stabbing and mortally wounding said James P. White with a knife, which he, said George Doles, then and there had and held, contrary to the form of the statute."

Afterwards, at the November term, 1882, of the court below, upon the appellant's arraignment and plea of not guilty, the issues joined were tried by a jury, and a verdict was returned finding him guilty of voluntary manslaughter, and assessing his punishment at imprisonment in the State prison for the period of twenty-one years. Over his motions for a new trial and in arrest of judgment, the court rendered judgment against him, in accordance with the verdict.

Several errors are assigned by the appellant upon the record of this cause, but the questions discussed by his counsel, in argument, are such as are presented by and arise under the alleged error of the court in overruling his motion for a new trial. Regarding the other errors assigned as waived, we shall consider and decide in this opinion such questions only as the appellant's counsel have presented for decision, in their well considered brief of this cause.

Counsel consider together the questions presented by the first three causes for a new trial, in the appellant's motion therefor, which were, in substance, as follows: 1. Error of the court in excusing and discharging from the jury Andrew J. Hobbs, after the jury had been accepted and sworn to try the issues joined in the cause, over the appellant's objection; 2. Error of the court in discharging the entire panel or jury, after they had been accepted and sworn to try the issues in the cause, over the appellant's objection; and 3. Error of the

-court in causing another or second jury to be empanelled, over the appellant's objections, and in compelling him to go to trial before such jury on said charge, a second time, over his objections.

In reference to these causes for a new trial the appellant's counsel say: " We think the court erred in discharging the juror Hobbs over the appellant's objections, after the jury had been empanelled and sworn to try the cause; and the court erred in empanelling another jury, and in requiring the appellant to again enter upon his trial, having been once in jeopardy." It may well be doubted, as it seems to us, whether the action of the court thus complained of by the appellant constitutes any proper or sufficient cause for granting him a new trial. A motion by the appellant for his discharge, on the ground that he had once been in jeopardy for the offence charged, would have properly presented the question to the trial court for decision, and if such motion had been overruled the assignment of such ruling as error would have properly presented the question for our decision. But waiving this point, and conceding, without deciding, that the question is properly before us, we think that the action of the court complained of in the first three causes for a new trial is not shown by the record to have been erroneous.

It is shown by the bill of exceptions that after the jury had been accepted and sworn to try the cause, the juror Hobbs being one of the panel, and before any other step was taken in the cause, the court adjourned, and, with the consent of the parties, permitted the jury to separate, under its instructions, during the adjournment; that when the court convened again the juror Hobbs stated to the court that he was sick and unable to serve as a juror in the cause, and asked to be excused from serving on said jury; that, upon the evidence of the juror and his physician then heard, the court found, and was justified, we think, in finding, that the statements of such juror were true; and that thereupon the court, over the appellant's objections, discharged such juror and the entire panel

from the further consideration of the cause. It was further shown by the bill of exceptions that the court immediately called the cause again for trial, and that the appellant at the time objected to being required again to answer the indictment and being again put upon his trial thereon, for the reason that he had once been put upon his trial and in jeopardy on said indictment, which objections were overruled by the court, and to this ruling the appellant excepted. The bill of exceptions further shows that thereupon a second jury was empanelled and sworn to try the issues in the cause, and that the appellant at the time objected to going to trial again upon said indictment, before such last empanelled jury, for the reason that he had already been put upon his trial and in jeopardy on said indictment, which objection the court overruled and compelled him to go to trial before said jury on said indictment, and to this ruling and action of the court he at the time excepted.

In section 14 of the Bill of Rights, in the Constitution of this State, it is declared that "No person shall be put in jeopardy twice for the same offence," and the same provision is found in article 5 of the amendments of the Federal Constitution. Section 29, R. S. 1881. If, therefore, it can be correctly said that the appellant, in the case in hand, was once in jeopardy at or before the discharge of the first jury, empanelled and sworn to try the issues in the case, then it must be held that the subsequent proceedings in the cause were had in palpable violation of the appellant's constitutional rights, and were consequently erroneous. The general rule is, no doubt, that the defendant in a criminal case is in jeopardy when the jury are properly empanelled and sworn to try the issues in the cause. Like other general rules, however, this one has its exceptions. Thus, in 1 Bishop Crim. Law, section 1032, it is said: "Sickness may come, unknown till it arrives. And if, while the cause is on trial, it falls on the judge or a juror or the prisoner, to interrupt the proceedings before verdict, this result shows that no jeopardy ex-

isted in fact, though believed to exist; and the prisoner may be required to answer anew." See, also, 1 Bishop Crim. Procedure, section 948, where it is said that if, during a trial, a juror becomes too sick to proceed, the panel may be discharged and the cause retried before another jury at the same or a subsequent term. This court has recognized the doctrine that the sickness of a juror during the trial and before a verdict is a sufficient cause for discharging the jury, and that, upon such discharge, a *venire de novo* may be issued, and the defendant may be put on his trial anew, on the same indictment, at the same or a subsequent term. *Rulo* v. *State,* 19 Ind. 298; *Vanderkarr* v. *State,* 51 Ind. 91.

We are of opinion, therefore, that there is no error in the action of the court of which the appellant complains in his first three causes for a new trial.

Appellant's counsel next consider in argument the questions presented by the fourth, sixth and seventh causes assigned in the motion for a new trial. Counsel first insist, under these causes for a new trial, that the court below erred in permitting the State, over the appellant's objections, to introduce to the court, in the presence and hearing of the jury, its preliminary proof, for the purpose of showing that certain dying declarations, which the State proposed to put in evidence, were made by the deceased while *in extremis,* and under a solemn sense of his impending dissolution; in other words, it is claimed by counsel that this preliminary proof, which was addressed to the court alone, and was not intended for the ear of the jury, ought not to have been presented to the court in the hearing of the jury, because of its supposed injurious effect on the minds of the jurors as against the appellant. Counsel cite no authority in support of this claim, and we know of none; and while we think there would have been no impropriety in the court's sending the jury out during the introduction of the preliminary proof, yet its refusal so to do does not seem to us to have constituted such an error as would authorize or require the reversal of the judgment. The ob-

jection of the appellant to the introduction of the preliminary proof in the hearing of the jury was addressed to the discretion of the trial court, and the action of the court in overruling the objection does not show such an abuse of its discretion as would constitute error.

Appellant's counsel also insist, under the eighth cause for a new trial, that the court erred in refusing to permit the appellant to show, by the testimony of the attending physicians, that at the time the dying declarations were made, the deceased was not *in extremis*. Upon this point the bill of exceptions states that the appellant " asked permission of the court to introduce Drs. Austin and Zeek, the attending physicians upon the deceased after his injury, and prove by them that deceased expressed an opinion to them, while they were in attendance upon him, after he had received his injury, that he would get well." This was the entire offer of the appellant, as shown by the record, and it will be readily seen that it does not sustain the point made in argument by his counsel. There was no offer made by the appellant, as far as the record shows, to prove by his attending physicians, or by any one else, that the deceased, at the time the dying declarations were made, was not *in extremis* nor under a solemn sense of impending dissolution. The court did not err in excluding the evidence actually offered by the appellant, as shown by the record, upon the point under consideration.

Under the tenth cause for a new trial the appellant's counsel claim that the court erred in refusing to allow appellant to show that immediately after the encounter, and while he was fleeing from the field, he said he " had just been waylaid by the deceased, etc." Upon this point the bill of exceptions states that the appellant offered to prove by the witness then on the stand, " that he saw George Doles about 10 o'clock of the night of the alleged homicide at the residence of his mother, about a mile and a quarter from the premises of White, from where Doles had just come, and that Doles in conversation, at his mother's, stated to James Bowlbys that

Doles *v.* The State.

he had just been waylaid by Perry White, and that he had hurt him, but hoped that he hadn't hurt him any worse than Perry had hurt him."

In discussing this point the appellant's counsel say : " This declaration was made at a time so closely connected and interwoven with the principal fact under investigation as to be hardly separable from it. It was a circumstance surrounding the principal fact, and was a part of the *res gestæ*." In *Jones* v. *State*, 71 Ind. 66, it was held by this court that statements made by the deceased, not contemporaneously with, but a few minutes after the transaction, as to who inflicted the injury, are not admissible as part of the *res gestæ*, and the length of time between the main fact and the statements can not be important, if such time elapsed as to make the statements, having regard to their form and substance, merely narrative. Surely, no more favorable rule than this can be applied in considering whether or not the statements or declarations of the defendant, in a criminal cause, are admissible in evidence as a part of the *res gestæ*. Applying this rule to the case in hand, we have no difficulty in reaching the conclusion that the court did not err in excluding from the jury the statement or declaration of the appellant offered in evidence. It was merely a narrative of a past transaction, and was not a part of the *res gestæ*.

The court gave the jury seventeen instructions, to each of which the appellant excepted, and he has assigned as cause for a new trial, that the court erred in giving the jury all these instructions. In argument, however, his counsel complain only of a part of one of the instructions, as follows : " Dying declarations derive their sanction, not from an oath, but from the solemn sense of impending death. They do not admit of the opportunity of a cross-examination, and should be weighed by the ordinary rules surrounding the admission of other evidence."

Of this part of an instruction, the appellant's counsel say :

" We do not believe that dying declarations should be weighed by the ordinary rules surrounding the admission of other evidence. These declarations were made by deceased, within an hour or so after the conflict, while his blood was hot with passion, and while surrounded by his friends naturally inclined to encourage him in any statements that would exonerate himself. We think the court ought to have said, such declarations should be cautiously received and carefully scrutinized."

It does not appear from the record that the appellant asked the court to instruct the jury that dying declarations " should be cautiously received and carefully scrutinized." Therefore, if such an instruction were conceded to be proper, the appellant could not complain here that such an instruction was not given. *Hodge* v. *State*, 85 Ind. 561; *Powers* v. *State*, 87 Ind. 144. The instruction of the court, of which appellant complains, is not very clearly expressed, but we think there is no such error in it as would authorize the reversal of the judgment. The caution and care with which dying declarations should be received and scrutinized seem to us to be questions for the court, upon the preliminary proofs; but when they are received and admitted, their credibility and weight are the principal questions for the jury.

The sixteenth cause for a new trial was " error, irregularity and misconduct of the jury trying the cause, in permitting Charles Jones, the bailiff in charge of said jury, to remain in their room and in their presence and hearing during their deliberation upon their verdict." This cause for a new trial was supported by the affidavits of the appellant and the bailiff. The State also filed the counter-affidavit of the bailiff, giving the facts more fully and in detail in regard to the alleged misconduct, than in his other affidavit. In his counter-affidavit, the bailiff, Jones, stated, in substance, that he was the bailiff, who had charge of the jury in this case; that the jury retired to the jury-room about two o'clock P. M. of the 9th day of December, 1882, the same being Sat-

urday; that after conducting the jury to their room, he did not remain therein during their deliberations, but went into such room occasionally during the afternoon and evening, only for the purpose of attending to the wants of the jury and keeping up fires; that at no time did he remain longer than was necessary for such purposes; that about seven o'clock P. M. of said day, by the order of the court, the jury were removed from the jury-room to the court-room, on account of the latter being more comfortable than the former room, the jury-room being at the top of the building, very small and poorly furnished, and the weather being then very cold; that after the jury were so removed to the court-room, the affiant locked said room and did not return until about nine o'clock on said night, except being in and out occasionally as the wants of the jury required, when he returned to the court-room where he replenished the stoves; that having no other place to remain about said building he sat down in the court-room apart from the jurors, and said and did nothing to any of them about their deliberations; that after so sitting a short time, he laid down on a table and went to sleep, and slept until he was awakened by a juror, about eleven o'clock on said night, and requested to go to the residence of the judge and bring him to the court-room to receive their verdict; that at no time did the affiant speak to the jury or any member thereof, concerning the matters upon which they were deliberating, except as to whether they had agreed, or as to the probability of an early agreement; nor did he, in any manner, influence or attempt to influence them; but that his presence in said room, as he believed, was necessary in the discharge of his duties, and that he only tried to discharge his duty as bailiff, according to law; and that, by no word or act of the affiant, was the defendant in any wise injured, as he believed.

In *Rickard* v. *State*, 74 Ind. 275, it was held, substantially, that the mere presence of the bailiff of a jury in their room during their deliberation would vitiate their verdict. In the

opinion of the court in that case some stress is placed upon the fact that " the State introduced no evidence contradicting, explaining or qualifying" the alleged misconduct of the jury in permitting their bailiff to be present in their room while they were deliberating upon their verdict.   In the case in hand, however, the State introduced as evidence the counter-affidavit of the bailiff, the substance of which we have given, for the manifest purpose of explaining and qualifying the alleged misconduct of the jury.   The question for decision here may be thus stated:   Does the evidence introduced by the State sufficiently show that the appellant was not injured or harmed by the misconduct of the jury of which he complains? We are of opinion that this question must be answered in the affirmative.   The trial court must have found, and was justified in finding, that the presence of the bailiff of the jury in their room during their deliberations was necessary to the proper discharge of his duties as bailiff, and did not injure or harm the appellant in any manner.   Upon such a question the court decides, as we have often held, upon the preponderance of the evidence, as in civil cases.   *Holloway* v. *State,* 53 Ind. 554; *DePriest* v. *State, ex rel.,* 68 Ind. 569; *Weaver* v. *State,* 83 Ind. 289.   The decision of the trial court upon such a question will not be disturbed by this court upon the weight of the evidence.

The only other ground upon which the appellant claims that the court erred in refusing him a new trial, was the alleged insufficiency of the evidence to sustain the verdict.   We can not disturb the verdict on the evidence.   There was some conflict, it is true, in the evidence, but there is an abundance of evidence in the record to sustain the verdict on every material point.   The credibility of the witnesses, and the weight of their testimony, were questions for the jury and the trial court.   Where there is a conflict in the testimony of the different witnesses which can not be reconciled, the jury have the right, and it is their province and duty, to determine which of the witnesses are the more worthy of belief.   When the

verdict of the jury has met the approval of the trial court, it will not be disturbed by this court upon the question solely of the weight or sufficiency of the evidence. This rule and the reasons for it have often been declared in the decisions of this court. *Cox* v. *State*, 49 Ind. 568; *Hayden* v. *Cretcher*, 75 Ind. 108; *Cornelius* v. *Coughlin*, 86 Ind. 461.

Upon the whole case, we are of opinion that the court did not err in overruling the appellant's motion for a new trial.

The judgment is affirmed, with costs.

Filed Oct. 11, 1884.