No. 595.

## WINSLOW ET AL. v. THE STATE.

CRIMINAL LAW.—*Keeping a House of Ill-Fame.*—*Evidence.*—Where, in a prosecution for keeping a house of ill-fame, there was evidence that men and women resorted to the house, and from the character of the people who went there, and all the attendant circumstances, the jury might have inferred that they resorted to the house for the purpose of prostitution or lewdness, a verdict against the defendants will not be disturbed on appeal on the ground that it was contrary to the evidence. Fox, J., dissents.

From the Porter Circuit Court.

*A. L. Jones* and *F. P. Jones*, for appellants.

*A. G. Smith*, Attorney General, for the State.

BLACK, J.—The appellants, Isaac Winslow and Anna Winslow, were prosecuted under section 1994, R. S. 1881, which provides that "Whoever keeps a house of ill-fame, resorted to for the purpose of prostitution or lewdness, * * * shall be fined," etc.

We are required only to determine whether or not the verdict against the appellants was contrary to the evidence.

If there was some evidence tending to prove every material fact alleged in the indictment, this court can not assume to weigh the evidence, and thereupon to interfere with the result reached in the trial court. *Van Dolsen* v. *State,* 1 Ind. App. 108 ; *Baker* v. *State,* 2 Ind. App. 517 ; *Squires* v. *State,* 3 Ind. App. 114 ; *Campbell* v. *State,* 3 Ind. App. 206.

The appellants did not introduce or offer any evidence. The evidence introduced by the State established beyond interference by this court every material allegation of the indictment, if it can be held that there was any evidence tending to prove that the house of ill-fame kept by the appellants was resorted to for the purpose of prostitution or lewdness. Proof that a house was resorted to for the purpose of such a secret vice will often, if not ordinarily, of necessity be by circumstantial evidence. Whatever inferences men of average intelligence might reasonably draw from facts, the jury may draw from circumstances proved to their satisfaction. It was shown by many witnesses and without any contradiction that it was and for a long time had been a house of ill-fame.

One witness who lived near the house in question testified that he had seen people walking from the street to the door of the house and from the door to the street, most at night time.

Another witness who also lived near the house, who testified that it was a disreputable place and much talked about among the neighbors and a great eye-sore to them, also testified that she had seen people going in and out of the house ; that she could not state the names of the men ; that there were some women. She gave the names of three women whom she said she had seen go there, and she testified that she was acquainted with the general reputation of these three women ; that the reputation of two of them, named, was not good and the other was suspicious.

Another witness, whose recollection as to the time was not

definite, testified that she had seen persons going into the house about seven or eight o'clock in the evening, she could not say how frequently.

The jury having inferred that this resorting to the house was for the purpose of prostitution or lewdness, and the court having refused to grant a new trial, we can not disturb the result reached.

The judgment is affirmed.

CRUMPACKER, J., did not take part in the decision of this case.

Filed Oct. 25, 1892.

## DISSENTING OPINION.

FOX, J.—A careful examination of the record in this case convinces me that the judgment of the court below ought to be reversed, for the reason that the evidence was insufficient to justify a conviction. Verdicts of juries are entitled to respect when they rest upon a solid foundation, but I am not a believer in the sanctity of verdicts to the extent that a wrong may thereby be galvanized into a right. I do not share the veneration that is sometimes manifested and expressed for the judgment of juries. As to whether a verdict is justified or not by the evidence is simply a question of fact. If it is not, then to permit it to stand is a denial of justice. It is a matter of universal knowledge that juries, as a general rule, are unlearned in the law, and without experience in the trial of causes. It is made the duty of the trial judge to instruct them as to matters of law involved in the trial before they retire for deliberation. After they have formulated their verdict, they are required to return it to him for his approval. If it is contrary to the law or the evidence, it is his duty, if the proper motion is made, to set it aside. It is also his duty to determine the competency of testimony, and thus say what evidence shall or shall not be considered by the jury in making their verdict. Every step that is taken in the case, from the beginning of the trial

until the rendition of the judgment, is under his supervision, and it is made his duty to see that justice is administered, and his power is ample.

That the rule governing a trial in an appellate court is different, concerning the propriety of setting aside verdicts, I admit, and this for substantial reasons. The reason for this difference is well stated in *Cox* v. *State*, 49 Ind. 568; *Adams* v. *Stringer*, 78 Ind. 175; Buskirk Prac. 237; *Dewey* v. *Chicago, etc., R. R. Co.*, 31 Iowa, 373. But nowhere, in my opinion, is the rule stated with greater force than by BUSKIRK, J., in the case of *Madison, etc., R. R. Co.* v. *Taffe*, 37 Ind. 361. For this reason I make a liberal quotation from his opinion in the case:

" The reason of the rule is, that the weight which is due to the testimony of witnesses very greatly depends upon the appearance, manner, and conduct of the witnesses upon the witness stand, their intelligence, their willingness or unwillingness to testify fully and frankly upon all matters within their knowledge, without reference to whether it affects the one party or the other, and whether they are free from passion, prejudice, or undue influence. It is a very easy matter to tell the truth, but it is a very difficult matter to testify falsely and not be detected. The witness that has nothing to testify about but what he knows, is open, frank, and undisturbed in his manner, while there is an indefinable and indescribable manner and look about a witness who is swearing falsely. The judge, counsel, and jurors have the opportunity of observing all these matters, and, as a general rule, can determine, with great accuracy, whether the witness is telling the truth or a falsehood. When the evidence comes here on paper, we have nothing but the words of the witness, and they are not always correctly taken down. With us, the testimony of an untruthful and unreliable witness, who is unimpeached, has as much weight as the testimony of the best and most reliable man in the community, for we have no means of telling the one from the other. We are deprived

of all the means of detecting falsehood and discovering the truth enjoyed by the judge and jury in the court below. Great and manifest injustice would be done if we should attempt to weigh the evidence and determine the credibility of witnesses. The reason of the rule does not apply to the circuit and common pleas judges; for they have the same means and opportunity of observing the witnesses, and determining the weight that is due their testimony as are enjoyed by the jury. The rule of this court was founded, and has been adhered to, upon the supposition that the judges of the lower courts have faithfully and fearlessly discharged their duties in refusing or granting new trials, as the justice of each case may require. If we should ever have reason to believe that the judges below apply the same rule in granting, or refusing to grant, a new trial that we do to reversing a case upon the weight of evidence, then we will have to change our rule; for great and glaring injustice would result if both courts were governed by the same rule. The rule does not apply in this court when the case was tried upon documentary evidence; for in such case we have the same means of examining and weighing the evidence as the judge or jury in the court below."

The rule to be applied in courts of last rosort has been formulated and stated in a variety of ways by this court and by the Supreme Court, so that it is not an easy task by any means to state exactly what the rule is, if it can be said that any exists. The rule has been stated and discussed to some extent in the following cases: *Hoagland* v. *Moore,* 2 Blackf. 167; *Kendall* v. *Hall,* 6 Blackf. 507; *Calkins* v. *Evans,* 5 Ind. 441; *Mc Vicker* v. *Pratt,* 5 Ind. 450; *Cahill* v. *Vanlaningham,* 7 Ind. 540; *O'Herrin* v. *State,* 14 Ind. 420; *Hollingsworth* v. *Picking,* 24 Ind. 435; *Medler* v. *State, ex rel.,* 26 Ind. 171; *McCaw* v. *Burk,* 31 Ind. 56; *Cox* v. *State,* 49 Ind. 568; *Hayden* v. *Cretcher,* 75 Ind. 108; *Long* v. *State,* 95 Ind. 481; *Doles* v. *State,* 97 Ind. 555; *Clayton* v. *State,* 100 Ind. 201; *Kleespies* v. *State,* 106 Ind. 383; *Hud-*

*son* v. *State*, 107 Ind. 372; *Skaggs* v. *State*, 108 Ind. 53; *Garrett* v. *State*, 109 Ind. 527; *Delhaney* v. *State*, 115 Ind. 499. In this court the statement of the rule has been without uniformity as well as in the Supreme court. See *Van Dolsen* v. *State*, 1 Ind. App. 108; *Baker* v. *State*, 2 Ind. App. 517; *Squires* v. *State*, 3 Ind. App. 114; *Campbell* v. *State*, 3 Ind. App. 206.

In a number of the cases above cited, in stating the rule, the Supreme Court has said that " even a criminal case will not be reversed upon the mere weight of testimony," and again, " where there is a conflict in the testimony of witnesses the verdict of a jury will not be disturbed, although it may not seem to be supported by a preponderance of the evidence." This, in the main, I admit to be correct, for the reason given in the case of *Madison, etc., R. R. Co.* v. *Taffe, supra*, above referred to.

In *Baker* v. *State, supra*, the opinion was given by the learned judge who gives the opinion of the majority of the court in this case. There the rule was stated to be as follows: " This court will not reverse upon the evidence a judgment in a criminal action where there is some evidence tending to sustain the verdict on every material point." In support of this statement he cites *Van Dolsen* v. *State, supra,* and *Delhaney* v. *State, supra.* Turning to *Van Dolsen* v. *State, supra,* we find the opinion given by the same learned judge. He there states the rule thus: " This court will not reverse a judgment upon the evidence in either a civil or criminal case if the evidence fairly tends to sustain it." In *Delhaney* v. *State, supra,* the rule is stated in exactly the same words. So in *Adams* v. *Stringer, supra.* Of course the announcement of the rule by this court, as well as by the Supreme Court in the cases above cited, does not have the force of an adjudication. It is simply stated as a rule of practice, and being so the rule should be ascertained and stated with some degree of accuracy.

The attorney general, in beginning his brief in this case, states the following as a proposition: "According to the

well established rules of this court if there is any evidence tending to support the action of the court below, the judgment must be sustained." The learned judge who gives the majority opinion in this case, in speaking of this subject, uses the following language : " If there was some evidence tending to prove every material fact alleged in the indictment, this court can not assume to weigh the evidence and thereupon to interfere with the result reached in the trial court." The rule as here stated, as well as that stated by the attorney general, when applied in many cases, is well enough, but as a general rule, to be applied in all cases, it is, in my opinion, too broadly stated. A rule in its practical application should not be carried beyond the reason that brought it into existence. It has been well and often said that " when the reason for a rule ceases the rule itself should cease." It is well known that in the trial of causes there is frequently much conflict in the testimony of witnesses. It is also well known that *proof* in a cause does not always depend upon the number of witnesses. The testimony of one witness will, at times, overturn that of a number of others. In such a case the question is resolved into one of credibility to be determined by the jury and the trial judge for the reasons given, among others, in the case of *Madison, etc., R. R. Co.* v. *Taffe, supra.* But if there is no conflict so that the question of credibility is in any wise involved, then the reason for the rule in a great measure ceases. As said by Buskirk, J., in speaking for the court in the case last above mentioned, " the rule does not apply in this court when the case was tried on documentary evidence ; for in such case we have the same means of examining and weighing the evidence as the judge and jury in the court below." I can see no reason why the same rule should not apply in a case where the evidence is purely circumstantial, especially so when the circumstances are proved by uncontradicted testimony, and no question is raised concerning the credibility of witnesses, as in this case. The evidentiary force of a proven

circumstance can as well be determined as can that of a written document. The judge and jury, in the trial court, have no advantage over an Appellate Court in this respect. If this is true, why should an Appellate Court shelter itself behind an arbitrary rule of its own creation, in order to avoid the responsibility of disturbing verdicts where justice has not been administered as the law requires. In the administration of justice, in theory at least, the law cares tenderly for the life, liberty and property of the citizen. A person charged with crime has a right to demand a speedy "public trial by an impartial jury in the county in which the offence shall have been committed." He has the right "to demand the nature and cause of the accusation against him" and to confront his accusers. He can not be lawfully convicted unless his guilt is proven beyond a reasonable doubt. He can not "be compelled to testify against himself," neither can he "be put in jeopardy twice for the same offence." It is also a constitutional mandate that "justice shall be administered freely, and without purchase, completely and without denial, speedily and without delay."

It is well understood that in order to lawfully convict a person upon a criminal charge, a high grade of proof is required, and it is the duty of courts to see that justice is so administered. It is an anomalous doctrine that holds that before a jury can lawfully convict a defendant his guilt must be proved beyond a reasonable doubt, but if he is so convicted, then after verdict, the conscience of the court will be satisfied with "some evidence" or "any evidence." Suppose, in a case of homicide, it should appear upon the trial that a man had been murdered by being stabbed with a knife, and that the defendant, who was a man of bad character, had been seen in the neighborhood where the body was found with a knife in his possession, and thus had an opportunity of committing the crime, would this justify a conviction? Or, suppose a man is tried for stealing a horse, and the evidence should show that the horse was found in his possession

six months after the larceny was committed, would this amount to proof beyond a reasonable doubt and justify a conviction? Yet in each of these cases the circumstances above mentioned, when proved, would be competent evidence upon material points. If the jury should convict upon such evidence as this, would an appellate court be justified in upholding the verdict for the reason that "there was some evidence tending to prove each material fact in the case?" Where circumstances are clearly established in a criminal case by the testimony of witnesses, then, as far as these circumstance are concerned, the question of the credibility of witnesses is out of the case, for the proof then depends upon the evidentiary force or value of the circumstances, and this, as where the evidence is documentary, can as well be determined by an appellate court as by a jury and a trial court, and being so, should the court shelter itself behind an arbitrary rule and permit a conviction to stand that is manifestly wrong? If such is the rule then I am not enamored with it. In my opinion the proper rule of practice upon this subject, in criminal cases, can well be stated as follows: When the evidence given at the trial is uncontradicted and without conflict, it should manifestly appear that the *evidence* fairly amounted to *proof* of the defendant's guilt. If the evidence is conflicting, then the question of the credibility of witnesses is for the jury, and if upon a proper theory of the case it manifestly appears that the *evidence*, with contradictions eliminated, fairly amounts to *proof* of the defendant's guilt, then the court should not disturb the verdict.

It has frequently been held in criminal cases, where the evidence is circumstantial, that if the circumstances can be explained upon any hypothesis consistent with the innocence of the accused, he should be acquitted. "This is the true test of circumstantial evidence." *Beavers* v. *State,* 58 Ind. 530.

The defendants in this case were indicted and prosecuted under section 1994, R. S. 1881. The crime, by the terms

. of the statute, consists in " keeping a house of ill-fame, re-
sorted to for the purpose of prostitution or lewdness." The
essence of the crime consists in permitting the sexes to *resort*
to a house for the *purpose of prostitution and lewdness.* Un-
less this fact is proved, a proper conviction can not be had
under this statute. *Henson* v. *State,* 62 Md. 231; *State* v.
*Boardman,* 64 Me. 523.

In *Betts* v. *State,* 93 Ind. 375, a house of ill-fame is de-
fined to be " a bawdy house, kept for the resort and unlaw-
ful commerce of the lewd people of both sexes." The word
" prostitution " implies " the act or practice of prostituting,
or offering the body to indiscriminate sexual intercourse."
Cent. Dic., Web. Dic. The word " lewd " is defined to mean
"lustful, wanton, lascivious, libidinous." The word "resorted"
implies " an assembling, or going to, or frequenting in num-
bers." *People* v. *Gastro,* 75 Mich. 127. Thus it will be
seen, in the light of the authorities, that the object of the
statute is to prevent the assembling of persons for the pur-
pose of unlawful and indiscriminate sexual intercourse.

In a prosecution under the statute three essential and ma-
terial facts must be alleged and proved—

1. The existence of a house of ill-fame.

2. That the person charged is the keeper of it, knowing
it to be such.

3. That it is resorted to by the sexes for the purpose of
prostitution and lewdness.

It is the settled rule in this, as well as in many other States,
that the character of the house may be proved by repu-
tation. This doctrine is denied by many courts of great re-
spectability. See *Henson* v. *State, supra; Cadwell* v. *State,* 17
Conn. 467; *Toney* v. *State,* 60 Ala. 97; *State* v. *Foley,* 45 N.
H. 466; *Handy* v. *State,* 63 Miss. 207; *State* v. *Boardman,*
64 Me. 523. The rule, however, as laid down in *Betts* v.
*State, supra,* is well supported. See *King* v. *State,* 17 Fla.
183; *Sylvester* v. *State,* 42 Tex. 496; *O'Brien* v. *People,* 28
Mich. 213; *State* v. *Smith,* 29 Minn. 193; *Territory* v. *Chart-*

*rand,* 1 Dak. 379 ; *Hogan* v. *State,* 76 Ga. 82 ; *Commonwealth* v. *Kimball,* 7 Gray, 328. The bad repute of the keeper is admissible as to guilty knowledge, but is not sufficient to show the actual use of the premises. *People* v. *Saunders,* 29 Mich. 269; *Sparks* v. *State,* 59 Ala. 82 ; *Commonwealth* v. *Gannett,* 1 Allen, 7 ; *State* v. *Boardman,* 64 Me. 523. Neither can the fact that the defendant is the keeper of the house be shown by general reputation. *Drake* v. *State,* 14 Neb. 535 ; *State* v. *Brunell,* 29 Wis. 435 ; *Burton* v. *State,* 16 Tex. App. 156.

Proof of the fact that the house is a house of ill-fame, and that it is kept or occupied by the defendants, will not alone justify a conviction, for the material element that it is resorted to by the sexes for the purpose of prostitution and lewdness would be omitted. If, however, it is proved as a fact that the house is resorted to for the purposes mentioned, and that it is occupied and controlled by the defendant, a conviction would be warranted, without proving as an independent fact that the house was reputed to be a house of "ill-fame," for the essence of the crime would be established.

The indictment in this case charged the defendant with keeping a house of "ill-fame" in the city of Valparaiso, from the 1st of May, 1888, to the 26th day of March, 1890, which house was resorted to for the purpose of prostitution and lewdness by "persons male and female" of bad reputation for chastity. At the trial the reputation of the house, as being a house of ill-fame, was sufficiently shown. It was also shown that, during the time mentioned, the defendants lived in the house, but it was not shown that the house was resorted to by persons "male and female of bad reputation for chastity" for the "purpose of prostitution and lewdness." Of course this fact need not be proved by direct testimony, but if not so proved, then circumstances must be shown from which it can be logically and reasonably inferred, such as lewd and lascivious acts, disorderly conduct,

obscene and profane language upon the part of those who visit the house. So may improper language or conduct upon the part of the defendants. The evil repute of the defendants and of those who frequent the house may likewise be shown. *People* v. *Hulett,* 15 N.Y. Suppl. 630; *Commonwealth* v. *Gannett, supra; Sparks* v. *State, supra; State* v. *Boardman, supra; Clementine* v. *State,* 14 Mo. 112; *State* v. *Brady,* 16 R. I. 51; *Johnson* v. *State,* 28 Tex. App. 562; *State* v. *Toombs,* 79 Iowa, 741.

Upon this point the authorities are numerous and uniform. There was no attempt whatever made to prove the bad character of either of the defendants; they, therefore, stood clothed with the legal presumption of good character. If they were guilty of the crime charged against them, this omission seems remarkable. No improper language, act or conduct upon the part of the defendant, nor of any other person in or about the house was shown, but everything was as quiet and orderly as at any other house in the city as far as the evidence reveals. Eleven witnesses were called by the prosecution; among others were two night policemen and the mayor and marshal of the city. One witness testified that he occasionally saw persons walking towards the house, but could not tell whether they went inside or not, but this was a year before the trial. Another witness testified that she had seen persons go to the house, and among others three women; that the reputation of two of the women was bad, and that of the other "suspicious;" that she had seen Mrs. Jones, whose reputation she said was suspicious, go there between the dates fixed in the indictment, but she did not state when it was she saw the other two go there; whether it was between the dates fixed in the indictment or not, or whether she saw them go there more than once, nor did she describe any suspicious circumstances nor any improper conduct upon the part of any of these women. Another witness testified that she had occasionally seen people go to the house, but could only remember of seeing one man go there

between the dates fixed in the indictment.    This was the extent of the testimony upon this point.    The mayor and marshal, and some of the other witnesses, testified that they had been in the house a number of times, but did not see any one there but the defendants, nor did they see any improper conduct of any kind.    These were the circumstances which were relied upon to prove that the defendants were guilty of keeping a house of ill-fame, resorted to for the purpose of prostitution and lewdness.    If this is proof beyond a reasonable doubt, then I do not understand the meaning of the term.    It will be observed that the credibility of witness is not involved, for there was no conflict in the testimony. The only question involved is, what do these circumstances legitimately tend to prove, keeping in view the distinction between evidence and proof?    Are not these circumstances entirely consistent with the innocence of the defendants? Aside from the fact that the house was proved to be a house of ill-fame, and this by reputation only, what inculpatory evidence against the defendants was given at the trial? Could not as much have been proved against any householder in the city of Valparaiso.  If the same circumstances had been proved against any householder in the city, would they have caused a shadow of suspicion ? and it should not be forgotten that the general reputation of the defendants was not assailed at the trial.    The question of the credibility being out of the case, what advantage did the jury have in this or any other appellate court in judging of the force of the circumstances as proved ?    That there was more competent evidence given at the trial is beyond question, and this evidence, as should all competent evidence, tended to support the issues in the cause.    But the question is, did it amount to proof beyond a reasonable doubt ?    Giving " mere evidence " in a criminal case does not by any means establish the guilt of the defendants with the certainty required.    The character of the charge can make no difference.    The law is no respecter of persons.    If a man is arraigned upon a criminal charge the

law does not stop to inquire whether he is a good or bad man, unless he invites the inquiry by well recognized methods. If a woman is arraigned it makes no difference whether she is a virgin or a harlot. If the evidence in this case had been as it was in *Betts* v. *State, supra,* as stated by the court in the opinion, I should unhesitatingly have been in favor of affirming the judgment of the court below. In that case, in affirming the judgment, the court said: "Complaint is further made that the verdict was not sustained by sufficient evidence, as no acts of prostitution or of lewdness in the house were proven, and as many of the persons, both male and female, seen visiting the house were strangers. But there were, nevertheless, many circumstances, proven at the trial, strongly tending to support the verdict. Other witnesses also testified to the bad reputation of the house, as well as of the defendants, and some of those who frequented the house, also to conversations with the defendants, amounting very nearly, if not quite, to admission, of their guilt."

For the reason that the evidence given at the trial, in my opinion, was wholly insufficient to support the verdict, I think the judgment of the court below ought to be reversed.

Filed Oct. 25, 1892.