## BRANAM *v.* STATE OF INDIANA.

[No. 25,214.   Filed March 7, 1929.]

*Miers & Corr*, for appellant.

*Arthur L. Gilliom*, Attorney-General, and *George J. Muller*, Deputy Attorney-General, for the State.

MYERS, J.—Appellant, with three others, by an affidavit in three counts, was charged: (1) With the unlawful possession; (2) with the unlawful manufacture of intoxicating liquor; and (3) with unlawfully having in his control and use a still for the unlawful manufacture of intoxicating liquor. §§2717, 2719 Burns 1926, Acts 1925 p. 144, ch. 48, §§4, 6. Trial by a jury, finding of guilty on the possession charge, and not guilty as to each of the other two charges. The overruling of his motion for a new trial is assigned as error. Verdict contrary to law for want of evidence to sustain it is the question we are called upon to decide.

Counsel for appellant and the attorney-general, in their recitals of the evidence, in some particulars do not agree, and, for that reason, we have carefully read all of the evidence as it appears in the record.

If we were authorized to try questions of fact and were called upon to determine the facts from the evidence submitted, we could not say there was a purposed wrongdoing or evil mind beyond a reasonable doubt, but this court on appeal can only review rulings of the trial court which involve questions of law. *Cox* v. *State* (1875), 49 Ind. 568, 572; *Oilar* v. *Oilar* (1918), 188 Ind. 125, 128, 120 N. E. 705.

The unlawful possession of intoxicating liquor was the ultimate fact to be proved. Appellant asserts that "to acquire possession of property two things are requisite: the intention of possessing as owner; the corporeal possession of the thing. 2 Bouvier, Law Dict. p. 35, note 4," and since there is no evidence showing that appellant owned the liquor, there was a failure of proof.

The definition of the word "possess" that appellant would have us adopt rests upon the right to have or hold the thing as property; a just right; to own; or, as applied to the word "possession"—"act, fact or condition of a person's having such control of

property that he may legally enjoy it to the exclusion of all others having no better right than himself." Webster. But it must be remembered that there is no property right in contraband liquor. *Elrod* v. *Moss* (1921), 278 Fed. 123, 129. It is not a subject of ownership. It is not a subject one may control and legally enjoy. It is not a subject to which one may claim the exclusive right in himself. To "possess" intoxicating liquor, other than as authorized by Acts 1925 p. 144, ch. 48, was declared to be unlawful. In the wisdom of the legislature, to thus prohibit would tend to a more effectual enforcement of the law prohibiting the use of intoxicating liquor for beverage purposes. In view of the foregoing observations, and keeping in mind the general rule that criminal statutes are to be strictly construed, we reach the conclusion that the legislature used the word "possess" in §2717, *supra*, as meaning to have the actual physical control of outlawed intoxicating liquor.

With this definition before us, we turn to the evidence, which shows that, on December 26, 1925, appellant was sixty-eight years old and had lived in Monroe County practically all his life, and had never been arrested or even accused of any infraction of the law. On that day, approximately one-quarter mile from appellant's home, in a deep gully or ravine, Emery Branam, son of appellant, and Taylor Gum operated a still. They made two gallons of whisky. There is no evidence that prior to this time they had been so engaged. At about 11:30 in the morning, a neighbor boy, while out hunting, and when about fifty yards from the location of the still, saw three people about there, but did not recognize any one of the three, although he was well acquainted with this appellant, Emery Branam and Taylor Gum. He returned home and told a neighbor what he had seen, and with this neighbor and another,

at about 1:30 o'clock, returned to within a short distance of the still, where they recognized Emery Branam and Taylor Gum as the only persons around there. They caused the county sheriff to be notified, and he came upon the scene between 4 and 5 o'clock.

Another witness testified that before noon of the same day, when about fifty yards distant from the still, he saw three persons there whom he recognized as Taylor Gum, a boy from Martinsville, and this appellant. Some time that afternoon, he went to appellant's home and told him "some fellows" were making mule back there and where they were. Appellant immediately started in the direction of where the still was located. One of the three who accompanied the boy back to within sight of the still remained on watch from 1:30 or 2 o'clock. He testified that, about 4 o'clock in the afternoon, appellant appeared at the place where his son and Gum were operating the still, and shortly thereafter the two boys began to dismantle the still and appellant left, taking with him two one-gallon jugs of whisky. He was seen to carry them up over the hill in the general direction of his home. The boys used all of the material for making whisky they had there. They scattered parts of the still along the ravine for a distance of 200 yards to the point where the boiler was found. No one other than appellant knew where he left the jugs. When accosted by the sheriff to know what he did with them, at first he denied knowledge of their whereabouts, and, under threats of arrest by the sheriff, he accompanied him to the treetop where he had thrown the jugs, saying that he taken them for the purpose of shielding his boy in case of a raid. Neither the place where the still was operated nor where the jugs were thrown was on the premises of appellant.

It will be noticed from the foregoing evidence that one witness, whose testimony is subject to criticism for want of clearness as to what he actually did see and know,

claimed that he saw appellant at the still before noon. If the jury believed this testimony, appellant knew of the activities of his son on that day, and his having admittedly taken charge of the jugs of liquor and secreted them in a treetop about 200 yards from his house, a place to his knowledge unknown to any one else, must be regarded as acts of physical control of the contraband liquor and, as a matter of law, technically sufficient to bring him within the statute making it unlawful to possess intoxicating liquor.

No other question is presented.

Judgment affirmed.