## HOLLAND and Others *v.* FULLER and Others.

After the dissolution of a partnership by the death of one of its members, its property, both real and personal, is subject to the trust of paying the debts of the firm, in the hands of a surviving member thereof.

Nov. Term,
1859.

HOLLAND
v.
FULLER.

A. and B. indorsed the paper of the firm of C. and D. in a large sum, which remained unpaid at the dissolution of the firm by the death of C. They subsequently indorsed the individual paper of D. in a large amount, upon their faith in his ability and honesty alone. With the proceeds of such individual paper, D. paid off the partnership paper upon which they were liable, but without any arrangement with them to that effect. D. then failed, and assigned to A. and B. all his individual property, and certain town lots belonging to the firm of C. and D. Without these lots, there was not sufficient property in the assignment to pay the debts which A. and B., by reason of their indorsement, had paid for D. E., F., and others, the only creditors of the firm of C. and D. whose debts remained unpaid, having obtained judgments, brought this suit to set aside the assignment so far as the lots in question are concerned, and to subject them to the payment of their judgments. Held, that A. and B. were not, under the circumstances, entitled to be substituted in place of the original creditors of the firm. Held, further, that the assignment of the lots in question, was void; and that a judgment ordering them to be sold, and the proceeds applied to the payment of the firm debts, was right.

Thursday,
December 1.

APPEAL from the *Wayne* Circuit Court.

WORDEN, J.—Suit by appellees against appellants to set aside a certain conveyance, and subject the property to the payment of debts.

Trial by the Court, finding and judgment for the plaintiffs.

The proper steps were taken to present the questions involved, for decision here.

The material facts are believed to be as follows:

The plaintiffs are the only unpaid creditors of the firm of *Richard* and *Silas Tyner*, and have respectively recovered judgments against *Richard*, as the surviving member of the firm, upon their claims against the firm. The partnership of *Richard* and *Silas Tyner* commenced in 1834, and continued until the death of *Silas*, which occurred in 1852. The firm was insolvent at the time of the dissolution by the death of *Silas*. At the time of the dissolution, the partnership owned lot No. 22, in *Cambridge City*. They had also purchased lots numbered 9, 10, 11, and 12, on which they had paid, out of the partnership effects, two-thirds of the purchase-money. After the death of *Silas*, *Richard* paid the remaining third of the purchase-money, and "knowing that the firm was insolvent, and that he would have the debts to pay," took the deed for them in

his own name.  Afterwards, in 1854, *Richard*, being insolvent, made a general assignment of his effects, including, amongst other property, the lots above mentioned, to *George Holland* and *Abner McCarty*, for the benefit of creditors.  The object of the suit was to set aside the assignment so far as the above-mentioned lots are concerned, and to subject them to the payment of the plaintiffs' judgments.

It appears that at the death of *Silas*, the firm was indebted in bank in the sum of 51,500 dollars, and also to *Roots* and *Coe* in the sum of 9,500 dollars.  For most of the indebtedness of the firm, either *Holland* or *McCarty* was liable, being on the paper.  After the death of *Silas*, *Richard* executed his own individual paper, with *Holland* and *McCarty* as his sureties, had the same negotiated, and applied the proceeds to the payment of the above sums.  The firm was also indebted to other persons about 20,000 dollars, which, after the death of *Silas*, was paid by *Richard*, in the same manner, except those mentioned in the complaint.  At the time of the assignment above mentioned, *Holland* was on about 104,000 dollars of *Richard's* paper, and *McCarty* on about 75,000 dollars of the same paper.  Between the death of *Silas* and the date of the assignment, there had been paid on the partnership debts, but about 10,000 dollars out of the assetts of the firm.  The value of the property embraced in the assignment was from 55,000 to 75,000 dollars.  The individual property left by *Silas*, together with the firm property, would not pay the firm debts, by 20,000 dollars.  At the death of *Silas*, *Richard*, upon an estimate, supposed himself to be worth 15,000 or 20,000 dollars, over and above his own and the firm debts.  After the death of *Silas*, the indorsements and acceptances of Messrs. *Holland* and *McCarty*, above referred to, were made upon the credit of *Richard*, and upon their faith in his ability and honesty.  Whenever he asked them to indorse for him, they did so without inquiry, and without explanations being made.  They indorsed the paper of the firm in the same way.

The assignment in question provides for the sale, &c.,

of the property, and the payment of creditors, subject to the provisions and trusts therein made. The second provision is as follows:

"2d. The following named persons are herein declared to be preferred creditors, to-wit, *Abner McCarty, Enoch McCarty, Nathan D. Gallion, Roots* and *Coe, Ezekiel Tyner* and *George Holland,* of the first class, to the extent following: the persons above named as preferred creditors of the first class, are now liable upon bills of exchange, notes, and other mercantile paper, negotiated at sundry banks, and by divers private bankers and brokers, for the benefit of said *Richard Tyner,* and for the benefit of *Tyner* and *Childers,* on which said parties above named are bound and liable as aforesaid as drawers, indorsers, acceptors, and payors. It is, therefore, hereby expressly declared that said funds so as aforesaid realized from said personal and real estate, shall be applied and paid in such manner as to save harmless, and fully and completely indemnify the said parties on such paper as they are so as aforesaid legally bound to pay, in the order following, that is to say, first, to indemnify and save harmless the said *Abner McCarty* upon all such paper of the aforesaid character and description as he is legally bound to pay, as first preferred creditor of this class. Second, to indemnify and save harmless, the said *Enoch McCarty, Nathan D. Gallion, Roots* and *Coe, Ezekiel Tyner,* and *George Holland,* upon all such paper of the aforesaid character and description as they are legally bound to pay, in proportions equal to their respective liabilities thereon."

The assignment does not provide for indemnifying *McCarty* and *Holland* against any liability as indorsers or sureties of *Richard* and *Silas Tyner.*

It appearing on the trial that the plaintiffs are the only creditors of *Richard* and *Silas Tyner,* whose claims have not been paid, the Court adjudged that the undivided half of said lot 22, and the undivided third of the other lots mentioned, be sold to satisfy the plaintiffs' claims, and that the proceeds, after paying costs, be applied *pro rata* thereon.

The counsel for the appellants claim that but two questions arise for our determination:

*First.* Was this property, belonging to the firm, to be regarded as real or personal estate? and if real, descending to the heirs at law of *Silas Tyner*, under what conditions did his heirs receive it?

*Second.* Can *Holland* and *Mc Carty*, under the circumstances of this case, be substituted in place of the original creditors of the firm?

For the purposes of this case, we deem it wholly unnecessary to determine how far, and under what circumstances, real estate owned by a partnership, will be treated as personalty. Whatever may be the rights of each partner to dispose of the partnership effects, in good faith, during the existence of the partnership, it is well settled that after dissolution, one member of the former firm cannot appropriate the joint property to the payment of his own individual debts, to the exclusion of the creditors of the firm. This doctrine is as applicable to real, as to personal estate. In the case of *Matlock* v. *Matlock*, 5 Ind. R. 403, it is held "that real estate acquired with partnership funds for partnership purposes, must be considered as partnership property, and first applied to the satisfaction of the partnership debts." *Vide Mc Culloch* v. *Dashiell*, 1 Am. Lead. Cases, 460, and notes.

The principle is, that upon a dissolution of the partnership there can be no proper distribution of the effects among the members of the firm, until the partnership debts are paid; or, in other words, the partnership effects are charged with the partnership debts, and the rights of the several members of the firm to the effects of the partnership, are subject to the rights of the partnership creditors. Mr. Justice STORY states the proposition in the following terms: "In short, in case of a dissolution, each partner holds the joint property clothed with a trust to apply it to the payment of the joint debts, and subject thereto, to be distributed among the partners according to their respective shares therein." Story's Part., § 360.

In *Nicholson* v. *Leavitt*, 4 Sandf. (S. C. R.) 252, it was held that an assignment by partners, of partnership property, giving preference in payment to the creditors of one of the partners over the creditors of the firm, was not, for that reason, void; but that such preference violated a rule of equity, was invalid, and might be avoided by a suit on behalf of such partnership creditors.

We come to the second question—Can *Holland* and *Mc Carty*, under the circumstances, be substituted in place of the original creditors of the firm? In our opinion, the doctrine of substitution is not applicable to the case.

It is insisted that the successive securities given by *Holland* and *Mc Carty*, were but a continuation of the original debts of the firm; and, therefore, that they should be regarded now as sureties of the firm, and entitled to occupy the position of creditors of the firm. The facts proven, however, are at variance with this position. To be sure, at the death of *Silas*, both *Holland* and *Mc Carty* were liable upon the paper of the firm; but that liability has been extinguished by the payment of the paper by *Richard*. The new paper made by *Richard*, and secured by *Holland* and *Mc Carty*, was not given in novation of the old. It does not appear to have been made to the parties that held the original debts. It was negotiated in the market, and the avails applied in payment of the old debts. It does not even appear that at the time the new paper was made, *Holland* or *Mc Carty* knew the purpose to which *Richard* intended to apply the proceeds of it. They indorsed the new paper upon the credit of *Richard*, and upon their faith in his ability and honesty, without inquiry or explanations; and without any understanding or agreement that the proceeds should be applied to the payment of the firm debts for which they were liable. At this time, *Richard* was apparently solvent, and worth 15,000 or 20,000 dollars over and above his own and the firm debts. *Holland* and *Mc-Carty* saw proper to become surety for *Richard* alone, and he having paid the partnership debts for which they were liable, they remain sureties only for *Richard*, and can claim

no rights as sureties for the firm. The assignment itself entirely excludes the idea of indemnity to them as sureties of the firm of *Richard* and *Silas Tyner*. This provides for indemnifying them against their liability on paper negotiated "for the benefit of said *Richard Tyner*, and for the benefit of *Tyner* and *Childers.*" No allusion is therein made to any liability as sureties of *Richard* and *Silas Tyner*. *Richard*, in his testimony, says that "the assignment referred to was executed to secure Messrs. *Holland* and *McCarty* from liability on the new paper thus given in extinguishment of the old indebtedness of *Richard* and *Silas Tyner.*" The assignment was undoubtedly intended to secure them from liability on the new paper; but the new paper cannot be said to have been given in extinguishment of the old indebtedness. It was the payment of the old indebtedness, by *Richard*, that operated as an extinguishment. Perhaps, had the new paper been given in novation or renewal of the old, it would be considered as essentially the same debt; but such, we have seen, was not the case. The new paper, so far as appears, was executed without any reference to the old whatever, and had no connection with it. The proceeds of the new, upon negotiation, were applied by *Richard* in payment of the old; but this fact will not entitle *Holland* and *McCarty* to be deemed sureties of the firm, the debt for which they were sureties being thus canceled.

We have seen that at the time of the dissolution, the firm owned lot No. 22, and had paid for two-thirds of the other lots. The Court only ordered.one-half of the above interests to be sold. This, we suppose, was intended to embrace the individual interest of the deceased partner in the lots. Whether the whole of lot No. 22, and the whole of the partnership interest in the other lots might not have been subjected to the payment of the plaintiffs' claims, is a question not before us, as the plaintiffs make no objection to the judgment. The defendants have no cause to complain of the judgment in this respect.

We see no error in the proceedings for which the judgment should be reversed.

Nov. Term, 1859.

HOLLAND
v.
FULLER.

Nov. Term,
1859.

HOLLAND
v.
FULLER.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Perry, G. Develin,* and *G. Holland,* for the appellants (1).

*J. S. Newman* and *J. P. Siddall,* for the appellees (2).

(1) Extract from the brief of the appellants:

Two questions arise, and only two, in this case, for the Court's determination, to-wit:

*First.* Was this estate belonging to the firm, to be regarded as real, or as personal estate? and if it was real estate, and descended to the heirs at law of *Silas Tyner,* under what conditions did his heirs take the estate?

*Second.* Can *Holland* and *McCarty,* under the circumstances of this case, be substituted in the place of the original creditors of the firm?

1. All real estate purchased for partnership purposes, and with partnership funds, is, as between the partners, and them and their creditors, to be regarded as personal property, whether a special agreement to that effect did, or did not, exist between the partners. 1 Pars. on Cont., pp. 125 to 129, and notes.—Pars. on Merc. Law, pp. 172 to 174, and notes.—Gow on Part., 36. See Story on Part. 127, and following pages. See, also, Pars. on Cont., p. 126, note (*d*).

But whatever doubts may exist as to the character of the estate thus purchased with partnership funds and for partnership purposes—whether it is considered as real or personal, it can make no difference in this case. If the estate descended to the heirs of *Silas Tyner,* the heirs received it charged with a trust in favor of the partnership, and the creditors of the partnership; and a Court of equity would compel a sale and conveyance whenever such a sale was required for the payment of the firm debts. See the authorities above cited.

2. It has been insisted by the defendants, that if the bills and notes of the partnership, at the death of *Silas Tyner,* were afterwards renewed by *Richard Tyner* and the sureties, they ceased to be the debts of the partnership, and thereby became the individual debts of *Richard Tyner,* and if he made an assignment for the payment of those debts, that the assignment as against partnership creditors, was void. There certainly is nothing in this objection. The successive changes were but a continuation of each debt; and when it was paid off by *Holland* and *McCarty,* they could claim to be substituted in place of the creditors whose debts they had paid. 2 Bouv. Inst. 69, 70.—1 Story's Eq., §§ 633 to 636, 472 (note 1), 489.—5 Ind. R. 492.—4 *id.* 66.—7 Blackf. 358.—2 Johns. Ch. 554.—4 *id.* 123.

(2) Extract from the brief of the appellees:

The legal estate of a partner in realty belonging to the partnership, descends to his heirs and widow, but subject to a trust and equitable lien in favor, first, of the creditors of the firm, and, secondly, to any balance that may be due the surviving partner. See Pars. Merc. Law, pp. 172, 173, and notes.

This lien upon the real estate of the partnership, is only an equitable one, and can only be enforced in equity. The deed or assignment of the surviving

Nov. Term, 1859.

partner will not convey the interest of the deceased partner. *Id.* 175, and conclusion of note 1.—Burr. on Assign. —.

It is true that in equity the real estate is treated as personalty, and is subjected to the payment of the firm debts, free from the claim of the widow for dower. But on the death of a partner, where real estate has been held by the firm, the legal title must vest somewhere, and as it does not vest in the surviving partner by the right of survivorship, it must vest in the heirs and widow, subject, however, to be reached, or at least so much of it as may be necessary, by proceedings in equity, and appropriated to the payment of the debts of the firm. The appellant, in his brief, assumes the ground that real and personal property belonging to the partnership are, in all cases, to be treated as personalty. The authorities cited by him do not sustain his position.

Mr. *Parsons,* in his Mercantile Law, p. 172, cited by appellants, uses the following language: "A partnership may hold real estate, as well as personal estate. But the rules of law in respect to real estate, as in relation to title,, conveyance, dower, inheritance, and the like, make some difference. As far, however, as is compatible with these rules, it seems to be agreed that the real estate of the partnership shall be treated as if it were personal property, if it have been purchased with the partnership funds, and for partnership purposes."

It is not compatible with the above rules, that real estate may be conveyed like personalty. The legal title vests in the heirs and widow, and can only be reached by such proceedings as were resorted to in this suit. The complainants are the only creditors of the old firm, and they have asserted their equitable claim to the firm real estate, in satisfaction of their claims. The assignment only conveys the legal interest of *Richard* in the real estate to his assignees, and as to that interest, it is gone from us, but the legal interest of *Silas* does not pass by the assignment, and that interest, the Court decreed, should be sold, and the proceeds applied to the payment of the firm debts.