Hayden, Administrator, *v.* Cretcher.

---

No. 7319.

## HAYDEN, ADMINISTRATOR, *v.* CRETCHER.

PARTNERSHIP.—*Promissory Note.—Firm Indebtedness.*—When a partnership is dissolved, and the partner remaining in business assumes and agrees, upon a sufficient consideration, to pay all debts of the firm, such partner has no authority after the dissolution to borrow money and sign the name of the late firm to a note for the purpose of getting money to pay the firm indebtedness.

SAME.—*Note Executed by Partner in Firm Name, after Dissolution of Firm, Not Binding on Retiring Partner.—Special Finding.*—In an action upon a note executed by a partner in the firm name, after the dissolution of the partnership, and for money borrowed by such partner, without the authority or consent of the retiring partner, against him, the court found specially that the plaintiff, the payee of the note, did not part with his money upon the credit of the firm, or upon the credit of the retiring partner, the defendant; that the money was delivered some time before the note was executed, and that the payee never knew that the defendant or his name was to be in any way connected with the note until the note was delivered to him, and that he knew that the firm had been dissolved.

*Held,* that the money thus borrowed was the individual debt of the partner who borrowed it and executed the note therefor, and not the debt of the defendant, and the note in suit not his note.

*Held,* also, that the fact that the money borrowed was used in payment of the firm's debts does not render the defendant liable for any part of such money, or upon the note given therefor.

PRACTICE.—*Weight of Evidence.—Supreme Court.*—The Supreme Court will not disturb the verdict of a jury, or the finding of a court, upon the mere weight of evidence.

From the Kosciusko Circuit Court.

*C. Clemans* and *A. C. Clemans,* for appellant.
*L. H. Haymond* and *L. W. Royse,* for appellee.

HOWK, C. J.—On the 14th day of September, 1877, David Hayden, then in full life, but since deceased, commenced this action against one Moses Rush and the appellee, Thomas Cretcher, as defendants. Hayden's complaint contained three paragraphs, the first two of which counted upon a promissory note for $150, dated February 22d, 1873, alleged to have been executed by the said Rush and Cretcher, as part-

ners, by the name of M. Rush & Cretcher, and payable one-day after date to said David Hayden. The third paragraph counted upon an open account for $150, as money loaned by Hayden to said Rush & Cretcher, and as money had and received by them for said Hayden's use, on said 22d day of February, 1873.

The defendant Rush made default. The appellee, Cretcher, answered by a general denial, and by a denial under oath of the execution of the note in suit.

Upon the trial of the cause, the court made a special finding of the facts and of its conclusions of law thereon, in substance as follows:

"The court finds the facts in this cause to be as follows, to wit:

"1st. In November, A. D. 1871, Moses Rush and Thomas Cretcher were partners, doing business together in the town of Pierceton, Indiana, and as such became indebted to various parties in various sums, amounting in the aggregate to about $2,500; and, among other persons, the said firm owed A. D. Brandreth & Co. about $500, which debts were all due, or about due, on the 1st day of November, A. D. 1872.

"2d. In November, 1872, the said parties dissolved partnership. Thomas Cretcher sold out his interest in the firm and its assets to his co-partner, Moses Rush, and Rush took all the partnership property and assets, and agreed with his co-partner, at the time of such dissolution, in consideration thereof and of the agreement then made between them, to pay all the partnership debts of said firm, among them the debt of said Brandreth & Co.; and there were then turned over to said Rush by the firm assets sufficient wherewith to pay all the said debts of said firm, and fourteen hundred dollars in assets over and above such debts.

"3d. The said Rush then formed a co-partnership, in the same line of business before carried on by Rush & Cretcher, with one Matchett, and at the time of the execution of the

note sued on was, with said Matchett, carrying on said business, of which plaintiff had knowledge.

"4th. No formal notice of dissolution was ever given by Rush & Cretcher, or either of them, to the creditors of the firm, or to any of the firm creditors.

"5th. At the time of such dissolution, the firm was not indebted to the plaintiff.

"6th. About a week before the 22d day of February, 1873, Moses Rush concluded a negotiation with plaintiff for a loan of $300 in cash. Rush commenced this negotiation after he and Cretcher had dissolved partnership. He wanted the money to pay to Brandreth & Co. Cretcher knew Rush was trying to make the loan from the plaintiff, and that he was intending to use the money, if he obtained it, with which to pay Brandreth & Co., but did not know Rush was seeking to give the note of the firm for any part of such loan, or was intending or seeking to pledge the credit of the firm.

"7th. The plaintiff delivered over to the said Moses Rush $300, the amount of said loan, about one week before the note sued on was executed. At that time plaintiff and Rush had not arranged that the name of the defendant, Cretcher, was to be signed to any note given for this money, or any part of it. Plaintiff parted with his money, not upon the credit of the firm of Rush & Cretcher, or upon the credit of Cretcher, as to the whole or any part of such loan.

"8th. At the time the note sued on was executed, it was given for $150 of the money so borrowed. The first knowledge plaintiff had that Cretcher or his name was to be in any way connected with the note sued upon, or with said loan, was when the note was signed, on the day of its date, and passed over to him by Rush. When he received said note, he said to Rush that the firm of Rush & Cretcher was dissolved, and that he did not think Rush had a right to sign Cretcher's name to the note, that Rush, by so signing, might get into trouble; Rush replied that it was all right, that this

was an old partnership matter, and he had a right to so sign the note ; that it would be received by John O. Cretcher, and plaintiff would have no trouble about it. Plaintiff then received the note sued on. At this time Rush had fair credit, was in business, and generally supposed to be in fair financial circumstances. In August, 1875, Rush failed in business, and is now insolvent, and was insolvent in August, 1875.

"9th. Cretcher knew that Rush had received the money for which the note was given, from Hayden, and knew that it was applied to the payment of the Brandreth & Co. debt, but did not know that his, Cretcher's, name was signed to the note, nor did he know that the money for which said note was given was in whole or in part procured on the credit of Rush & Cretcher jointly, or as to any part on the credit of his, Cretcher's, name. As soon as Cretcher ascertained his name was upon the note sued on, he called upon the plaintiff and informed him that the signature was not his, and was without his authority or consent.

"10th. The defendant Thomas Cretcher never authorized Moses Rush to sign his name to the note sued on, nor consented to the same.

"11th. The only transaction between the plaintiff and the defendants is the one in these special findings set out.

"And the court, as conclusions of law, finds from the foregoing facts, that the note sued on is not the note of Thomas Cretcher, and that he is not legally liable to pay any part thereof.         (Signed)         ELISHA V. LONG, Judge."

To the special findings of the court and its conclusions of law thereon, the plaintiff below excepted; and moved the court for a joint judgment against both defendants, on the special findings, as to the note, for the sum of $174 ; which motion was overruled by the court, and to this ruling he excepted. Judgment was rendered against the plaintiff below for the appellee's costs, and from this judgment this appeal is prosecuted by the plaintiff's administrator.

The appellant has assigned errors, as follows:

1. The court erred in its conclusions of law upon the facts specially found;

2. The court erred in overruling the plaintiff's motion for a judgment upon the special findings, for $ —;

3. The court erred in overruling the plaintiff's motion for judgment upon the special findings, and the third paragraph of his complaint; and,

4. The court erred in overruling the plaintiff's motion for a new trial.

It is claimed by the appellant's counsel, in argument, that the court erred in its conclusions of law upon the facts specially found, because the court found, as a fact, that the money borrowed from the plaintiff by the defendant Rush, on his own credit, and for which he subsequently executed the note in suit, was applied by him to the payment, in part, of the debt of the old firm of Rush & Cretcher to A. D. Brandreth & Co. It is very clear, we think, that this position of counsel can not be maintained. When the firm of Rush & Cretcher was dissolved, the court found that the defendant Rush, upon a sufficient consideration, assumed the payment of the entire indebtedness of the firm, including the debt to Brandreth & Co. As between Rush and the appellee, the firm indebtedness became, in legal effect, the individual indebtedness of Rush, and not of the appellee; and, while the latter was by no means discharged from his liability to the creditors of the firm by the contract of dissolution, yet, as between themselves, the appellee had the right to insist that Rush should pay the debts of the late firm out of his own proper means. After the dissolution of the partnership, Rush had no power or authority to contract new debts in the name, or upon the credit, of the late firm, even for the purpose of getting money to be applied in payment of the firm indebtedness, which he had assumed to pay. The court found as facts, that the plaintiff parted

with his money, not upon the credit of the late firm of Rush
& Cretcher, nor upon the credit of the appellee, Cretcher,
as to the whole or any part of such loan; that the plaintiff
delivered the money to Moses Rush about a week before the
note in suit was executed; that the plaintiff never knew that
Cretcher, or his name, was to be in any way connected with
the note until it was signed and delivered to him by Moses
Rush; and that the plaintiff then told Rush that the firm of
Rush & Cretcher was dissolved, and he did not think Rush
had a right to sign Cretcher's name to the note in suit.

Upon these facts, we are clearly of the opinion that the
money borrowed from the plaintiff was the individual debt
of Moses Rush, and not the debt of the appellee, and that
the note in suit was not the appellee's note. The fact, that
the money borrowed was used by Rush in payment of the
old firm's indebtedness to Brandreth & Co., certainly did
not render the appellee liable to the plaintiff for the whole
or any part of such money, or upon the note given therefor
by Rush, long after the dissolution of the partnership, and
without the authority or consent, express or implied, of the
appellee. The court did not err in its conclusions of law
upon the facts specially found, nor in overruling the plain-
tiff's motions for judgment thereon. *King* v. *Barbour*, 70
Ind. 35, on page 40.

In the plaintiff's motion for a new trial, several causes
were assigned therefor; but of these we need only notice
the first three causes, as follows:

1. The finding and decision of the court were not sus-
tained by any sufficient evidence;

2. The finding was contrary to the evidence; and,

3. The finding and decision were contrary to law.

We have read the evidence as it appears in the record.
It consists chiefly of the testimony of the parties to the suit,
at the time of the trial in the lower court. It was conflict-

ing, and, as it is stated in the bill of exceptions, it is not very satisfactory. We can not say, however, that the evidence in the record does not tend to sustain the special findings of the court on every material point. It is not the province of this court to weigh the evidence and determine its preponderance. For this purpose, the learned judge who, tried the cause had opportunities and facilities, which we can not have, for determining the credibility and value of the evidence, and it is for this reason it has been so often decided that this court will not disturb the verdict of a jury, or the finding of a trial court, upon the weight of the evidence. *Cox* v. *The State*, 49 Ind. 568 ; *Rudolph* v. *Lane*, 57 Ind. 115 ; *The Fort Wayne, etc., R. R. Co.* v. *Husselman*, 65 Ind. 73. In the case now before us, the evidence tended to sustain the special findings, and certainly they were not contrary to law. The motion for a new trial was correctly overruled.

The judgment is affirmed, at the costs of appellant, to be levied of the estate of his decedent in his hands to be administered.