N. H. WARREN & COMPANY, PLAINTIFFS IN ERROR, V. THOMAS H. MARTIN, DEFENDANT IN ERROR.

Partnership: PAYMENT BY PARTNER OF INDIVIDUAL INDEBTEDNESS. In an action by copartners against a vendor for the proceeds of a bank check made by the partner, as manager of a firm of grain dealers, on their bank deposit, for house furniture for his separate use, *Held*, That it may be presumed, without allegations to the contrary, that the check was given on account of the partner's interest from profits in the business of the firm.

ERROR to the district court for Fillmore county. Tried below before MORRIS, J.

*John P. Maule*, for plaintiffs in error, cited: 3 Kent, 42, 43, 34. 1 Parsons on Contracts, 184. Story on Partnerships, Secs. 131, 132. Bigelow on Fraud, 146. *Charzoures v. Edwards*, 3 Pick., 5. *Dob v. Halsey*, 8 Am. Decisions, 293. *Kingsbury v. Sharp*, 28 N. W. Rep., 74. *Livingston v. Roosevelt*, 4 Am. Decisions, 273. *Rogers v. Batchelor*, 1 Am. Leading Cases, 546. *Sauntry v. Dunlap*, 12 Wis., 404. *Fletcher v. Anderson*, 11 Iowa, 228. *Rutledge v. Squires*, 23 Iowa, 53. *Whitmore & Burnett v. Adams*, 17 Iowa, 567. *N. Y. Fireman Ins: Co. v. Bennett*, 13 Am. Decisions, 109.

*John Barsby*, for defendant in error, cited: *Smith v. Smith*, 5 Ves., 189. *Walton v. Butler*, 29 Beav., 428.

COBB, J.

This action was brought on error from the district court of Fillmore county, where judgment was rendered for the defendant.

The plaintiffs, in 1885, formed a partnership with James Peabody, of Fairmont, Nebraska, for the purchase and shipment of grain at Fairmont and Geneva, Neb. Peabody, without contributing any money, managed the business, and was entitled to a certain share of the profits. As a member of the firm, he purchased of defendant, then a furniture dealer in Fairmont, $400 worth of furniture for his own personal use. On October 14, 1885, Peabody paid the defendant's bill with the following check:

"No. 1258.         FAIRMONT, NEB., Oct. 14, 1885.

Geneva Exchange Bank pay to T. H. Martin, or order, four hundred dollars.

"JAS. PEABODY & CO.

"$400.                          ". WRIGHT."

Which check was delivered to defendant, endorsed by him, and paid. The plaintiffs allege that the transaction

was without their knowledge or consent, and in fraud of their rights.

The partnership was dissolved in August, 1886, all assets, property, and benefits of the firm belonging to the plaintiffs. That both Peabody and the defendant refuse to account for the money paid and received on the check.

The defendant appeared, and demurred to the plaintiffs' petition—"that it does not state facts sufficient to constitute a cause of action"—on which judgment was given for the defendant.

The plaintiffs assign as errors:

I.   That the court erred in sustaining the demurrer.

II.   That the judgment of the court is contrary to law.

The plaintiffs' counsel insist that the rule of law applies to this case—"that where the creditor of one partner knowingly accepts a partnership engagement in payment of that partner's individual debt, the transaction does not affect the rights of the other partners without they consent to or sanction it, and is fraudulent and void as to them." In support of this rule is cited: 3 Kent, 42, 43, 44. Story on Partnership, 131, 132.

This proposition is not disputed. It is a well-settled principle that one partner cannot rightfully apply the funds of his firm to the payment of his own pre-existing debts without the implied authority and assent of the other partners. This rule has been held to extend even to creditors who had no knowledge, at the time, that the fund was partnership property. The authority of each partner to dispose of the partnership funds, strictly and rightfully, extends only to the partnership business, or to that within the scope of its authority, or to the progress of its affairs. This rule, however, is subject to exception. In the case of *bona fide* purchasers, without notice, for a valuable consideration, the partnership may be bound by the act of one. The power of each, ordinarily, in the absence of fraud on the part of purchasers, or covin on the part of vendors,

has complete disposition of partnership interests, and is considered as the authorized agent of the firm. This power is indispensable to the safety of the public and the successful operations of the partnership. The same power in each exists respecting purchases on joint account, without regard to what fraudulent views the goods were purchased, or to what purposes they were applied by the purchasing partner, if the seller be clear of the imputation of collusion.

Where one partner misapplies the funds or securities of the partnership in payment of his own private debts, the creditor dealing with the partner, and knowing the circumstances, will be deemed to act in fraud of the partnership, and the transaction will be treated as a nullity. But while this is the general doctrine in the absence of controlling circumstances, yet the presumption of any fraud or misapplication may be rebutted by the circumstances of the particular case. It may be shown that the other partners have, by fair implication, authorized the application of funds to the very purpose, or that the partner has acquired, with the consent of the firm, an exclusive interest therein, or that, from other circumstances, the transaction was actually *bona fide* and unexceptionable, although it went to the discharge of the private debt of one partner only. For the application by a single partner of a joint security in discharge of his individual debt by no means necessarily establishes that it is a fraud upon the firm, for it may not only have been expressly authorized by the firm, but it may frequently result from prudential considerations and arrangements referable to their own business interests. Story on Partnership, 133.

In the leading case of *Dob v. Halsey,* 16 Johnson, 33, which runs through the notes of the text-books on this subject, and where this principle was reviewed in the supreme court at Albany, in 1819, it was held that, " Where one partner delivers partnership property to a third person, who receives it, knowing that it is such, in payment of his

individual debt, in an action by the partners against the creditors of the one partner for the value of the property, the debt of the one partner is not a defense or set-off against all the partners."

It was also held that, "where one person advances funds for carrying on trade, and another furnishes his personal services, for which he is to receive a proportion of the profits, there is a partnership existing between them both as regards the partners themselves and third persons."

And further, that, "in an action for the breach of a contract relative to the partnership concerns, if all the parties do not join as plaintiffs in the suit, the non-joinder of the other partner is a ground for nonsuit at the trial."

Spencer, J., in delivering the opinion of the court, said, "Had the one partner, Moore, paid the defendant the debt due to him in money which he had taken out of the partnership fund, it would have presented a different question. Such a payment would have been valid in the absence of all proof that the defendant knew that the money of the firm had been thus misapplied. In such case there would have been ground for presuming that the transaction was fair, and that the debt had been paid out of the private funds of the partner indebted."

This leading precedent presents two phases of the present case: the partner Moore and the partner Peabody were members of the plaintiffs' firms, respectively, as managers, to receive their proportion of the profits, and neither joined in the action for the recovery; for the non-joinder, in the precedent, the plaintiff was cast.

In the case of *Ganesvoort v. Williams and Johnson*, 14 Wendell, 137, the same principle was again reviewed and maintained, by the same court, at Utica, in 1835, "that where one partner of a mercantile firm gives a note in the name of his firm for his individual debt, the *assent* of the other partner may be implied from the facts and circumstances; an *express assent* need not be shown." Nelson,

J., in delivering the opinion, said: "*Prima facie,* the execution of the bill or note in the name of the firm by one partner binds the whole.   The burden, therefore, of proving a presumptive want of authority, and of course fraud, for that necessarily follows, lies upon the copartners.   We hold that the fact of the paper of the firm being given out of the partnership business by *one* member, is presumptive evidence of the want of authority to bind the *other* members of the firm; and if the person taking it knows the fact at the time, he is chargeable with notice of want of authority, and guilty of concurring in an attempted fraud upon the other partners.   Why should the partners be bound at all when the paper is, in fact, signed without their authority?   This is, no doubt, against general principles, and involves the injustice of subjecting a person to answer for an act of another to which he never assented. The answer is founded upon the law merchant.   By entering into the partnership each reposes confidence in the other, and constitutes him a general agent as to all the partnership concerns; and the inconvenience to commerce, if it were necessary that the actual consent of each partner should be obtained, or that it should be ascertained that the transaction was for the benefit of the firm in the ordinary transaction of their business, suggested the rule, that the act of one, when it has the appearance of being on behalf of the firm, is considered the act of the rest, and whenever a bill is drawn, accepted, or endorsed by one of several partners on behalf of the firm, during its continuance, which comes into the hands of a *bona fide* holder, the partners are liable to him, though in truth one partner only negotiated the bill for his own benefit, without the consent of the copartners.   Chitty on Bills, 30.   *Swan v. Steele,* 7 East, 210.

"There appears never to have been a doubt in England, or in this state, in any of the cases cited, but that all the partners are bound unless the *bona fides* can be impeached.

What shall amount to an impeachment is oftentimes disputed, and in England seems to rest very much upon the circumstances of the case. There is more uniformity and precision in the application of the rule here. It is undoubtedly the practice of mercantile firms to endorse the bank paper of each other by the hand of any one of the members. Upon a strict application of the rule in this court, and upon some of the cases in England, such paper would not bind the firm, if the bank had knowledge of the facts. It is not within the purpose and business of a mercantile firm to endorse paper for their neighbors. Such business is not within the contemplation of the partnership, and therefore no authority is to be implied or attached to any one of the members. It might well alarm the community to lay down the position that the partnership endorsement of accommodation paper by one of the firm, for any person that might ask him, would be binding upon all, whether the holder knew the facts or not. Even the authority of one partner to sign bills and notes for the firm when interested is only implied, and may be rebutted by notice. Chitty on Bills, 33. It would be a strange implication of authority where the firm had no interest. But if it should appear that a house was in the habit of endorsing at the bank, or elsewhere, for another, such general course of dealing would be sufficient evidence of authority from all the members of the firm, and such use of it by one would bind all. *Duncan v. Lowndes and Bateman*, 3 Camp., 478. The authority would not flow from the partnership, but from facts and considerations independently of it. Lord Eldon, in *Ex parte Bonbonus*, considered that, in many cases of partnership and different private concerns, it is frequently necessary for the salvation of the partnership that the private demand of one partner should be satisfied at the moment; for the ruin of one partner would spread to the others, who would rather let him liberate himself by dealing with the firm than to be subject to disaster."

I should not have extended the citation to the English opinion as carrying any particular weight in the present case, as it tends to an extension of the acknowledged American rule to that of a general liability of the firm. But it is, however, a pertinent observation, and may be considered in ascertaining from the course of dealing and common practice of the plaintiffs, before and after the transaction involved, whether an implied assent is not to be inferred in this case.

In the leading modern case of *Locke v. Lewis*, 124 Mass., 1, 1879, it was held that "a sale by a partner, in payment of his own debt, of goods which are in fact goods of the partnership, but so entrusted to him as to enable him to deal with as his own, and to induce the public to believe to be his, which the creditor receives in good faith, and without notice that they are the goods of the partnership, is valid as against the partnership and its creditors."

Justice Gray, in this opinion, cited and reviewed the most noted precedents, from that of the first reported case of *Stacey and Ross v. Decey*, 2 Esp., 469, in which Lord Kenyon held (in 1789), "that the defendant's claim against Ross only was a valid set-off to the plaintiffs for partnership goods sold in the name of Ross; that the plaintiffs had subjected themselves to it by holding out false colors to the world by permitting Ross to appear as sole owner."

In reviewing that of *Rogers v. Batchelor*, 12 Peters, 221, in which Judge Story's views were carried beyond former opinions in favor of absent and silent copartners, to the effect "that their title to the property is not divested in favor of the separate creditor, whether he knew it to be partnership property or not," relieving the partners of caution and burdening the creditor with risk—of this extreme doctrine Justice Gray says: "With all deference to the opinion of so eminent a jurist, we are compelled to think that in this instance he overlooked the distinction between the acts of one who undertakes to dispose of prop-

erty in his possession, without title or authority from the owner, and acts of one who, having authority, is guilty of fraud or abuse in the mode of exercising it. In the former case no title can pass, and it is immaterial whether the other party acted in good faith or had knowledge of the want of authority. In the latter case the principal is bound to the extent of the apparent authority of his agent, notwithstanding any violation of duty or right, unless the other party knew of the agent's breach of duty. This distinction is elementary in the law of agency, as has been pointed out in the fullest manner by the same learned judge, when elucidating the principles of agency and partnership. In the commentaries on partnership, though the opinion in the case which relates to this subject is printed at length in a note, the text does not correspond to it, and the case is only referred to in support of other propositions. How the nature of the transaction can put the creditor upon inquiry, or show negligence upon his part, if he does not know and has no means of knowing that the property transferred to him by one partner is partnership property, it is difficult to understand."

Upon a careful examination of the cases referred to by Judge Story, in *Rogers v. Batchelor*, I cannot find even the slightest expression of an opinion that the title in the property, or payment for property, would not pass to the private creditor, if he did not know it to belong to the partnership; but, on the contrary, there are pointed suggestions and substantial grounds to maintain that it would.

In *Greeley v. Wyeth*, 10 N. H., 15, Chief Justice Parker held, "that one partner might appropriate to his own use goods received in consideration of property or services of the partnership, without subjecting the party from whom he received it to an action in favor of the partnership; that what disposition he made of the money, or of specific articles which he received for work and labor, or materials, was a matter between him and his partner; and that the

latter, by entering into partnership with him, trusted him thus far, and must look to the partnership account for remuneration."

The precise point before the court, in this instance, the payment of a bank check to the creditor, does not appear in the cases cited. The principle of payment to creditor, however, must remain the same, though the circumstances be changed by a cash payment of the defendant's debt, which, it has been said, creates additional presumptions in his favor. Every check is presumed to be given for value received; they are payable without grace, and are an absolute appropriation of so much money in the bank to the holder. *Murray v. Judah*, 6 Cowen, 490. The claim of the misapplication of the bank account, under this payment, must, therefore, be brought home to the actual notice and knowledge of the defendant to entitle the plaintiffs to recover.

The most recent writer on the law of limited partnerships, Bates, 167 (1886), treating of the rights and powers of assignees in cases of insolvency, holds, "that in many of the states the doctrine that he represents the debtors and not the creditors would be repudiated, for he is generally allowed to attack fraudulent conveyances. A payment of the private debt of one partner is, however, not a fraudulent conveyance, and the question would arise in such states, could the partners themselves bring such suit? The answer is to be found in the general law of partnership: First, if such use of the assets was the act of all the partners, they cannot undo it; it is a lawful conversion of joint into separate assets. Second, if the act is that of one partner alone, or less than all, it is a misappropriation as to those not consenting. And here the courts divide, some holding to the technical law that as all the partners must be plaintiffs, the wrong-doer is one of those seeking to avoid his own act, which cannot be; others finding reason to get away from this technical rule, as

Warren & Co. v. Martin.

that the defendant is the one who first offers to show the wrong-doing, and he will not be allowed to do this, and therefore the action lies. Again, if the payment was in money of the firm, it may be lawfully taken by the separate creditor, for money has no ear-marks. And in Massachusetts it is said to be the law that in certain cases the creditor who received other property than money can retain it in a limited partnership transaction. See *Locke v. Lewis*, 124 Mass., 1."

From what we have gathered of expressed opinion and judicial decision as to the law of partnerships applicable to this action, the plaintiffs' right to recover would seem to depend largely on the facts and circumstances tending to show the plaintiffs' acquiescence in the appropriation of the bank check, and the defendant's knowledge that the drawer had neither right nor interest in the proceeds.

It will not be doubted that the partner had authority to deliver the bank check; his agency and partnership were sufficient authority. The check was a cash payment for household goods, incidental to livelihood, subsequent to partnership, and was not a pre-existing debt. It was of record, debit to the firm and credit to the bank, in the plaintiffs' accounts with both, for a period of ten months prior to the dissolution of the business. For this period, then, if there was no complaint by the copartners, it is to be presumed there was an acquiescence in the appropriation of the check. It is not alleged that, during this period, the firm and the managing partner were not in accord, and responsible in business accounts and transactions to each other.

The plaintiffs allege " that they entered into partnership with James Peabody for the purchase and shipment of grain only, at Fairmont and Geneva, and that the defendant knew it." They further allege "that the said Peabody purchased of the defendant, who was a dealer, $400 worth of furniture for his own separate use and benefit, to be

used in his own house, all of which the defendant knew."
It is not, however, alleged, nor is there is any presump-
tion for it, that the defendant knew that Peabody had not
a lawful title, and sufficient interest in his firm's bank
account and deposit at the First National Bank of Fair-
mont, when he received and endorsed the check thereon.
It is not alleged that he had such means of knowledge of
the limited partnership, and the state of accounts between
the drawer of the check, at Fairmont, and the plaintiffs
in a distant state, as to charge him with notice of the ab-
sence of authority.    It is admitted that his interest, as
manager, was that of a proportion of the profits of the
firm in the grain trade.    The extent or limit of that inter-
est it was not competent for the dealers of Fairmont or
the public to resolve.    That it was important or consider-
able, it is not doubtful that dealers and the public might
be inclined to accept to their disadvantage, unless there was
evidence to the public of the rights and responsibilities of
the individual partners in the firm.    The statute book has
supplied this authority.

The 27th Sec., Chap 65, title, partnership, of the statute
laws (1885) provides that, any association of persons under
a firm, not incorporated, shall have recorded in the county
clerk's office of the county wherein their place of business
is located, a certificate signed by each member of the as-
sociation, showing the general nature of their business, a
certified transcript of which shall be *prima facie* evidence
in any court in the state of any of the facts therein set forth.

No such evidence of legal notice to the public has been
produced.    None such is alleged to exist.    Local dealers
and the public cannot, therefore, be said to have had such
notice as would oblige them, in every transaction with the
manager of the firm, to be mindful of the *caveat* of the
horse dealer for their own self-protection.

But whether these legal presumptions incline the weight
of authority to discharge the defendant's liability under

the facts and circumstances presented, need not further be considered. The direct issue submitted is that of the sufficiency of the cause of action as pleaded. We find that it is not alleged by the plaintiffs that their partner, Peabody, was insolvent during the partnership, or was without sufficient interest in the bank deposit, on account of the profits of the firm, to have paid the amount of the check, or that the same was paid from the plaintiff's sole deposit without deduction or settlement from the copartners' proportion of the profits at the dissolution of the firm, ten months subsequent to the date of the check. Nor is it alleged that the bank paid it. It is, therefore, possible, under the pleadings, if the plaintiffs maintain this action, that they have already been paid the amount of the check, and that they have not suffered on that account; that they still have a legal defense against its collection, and that they have preserved a separate chose in action against their copartner, by not joining him in this, and that, therefore, to maintain the present action would be putting the defendant to greater disadvantage in his defence than can be justified towards an innocent vendor without notice and not charged with collusion.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.