B. O. PERKINS ET AL., APPELLANTS, V. BUTLER COUNTY ET AL., APPELLEES.*

FILED FEBRUARY 20, 1895. NO. 5659

1. **Assignment of Unearned Money Under Contract.** An assignment of moneys not yet earned, but expected to be earned in the future under an existing contract, is in equity valid and enforceable.

2. **Insolvent Partnership:** DISTRIBUTION OF ASSETS. When a partnership is dissolved and is insolvent, its assets will be treated by a court of equity as a trust fund for the payment of partnership creditors, and the creditors of one partner will not be permitted to divert the assets to the prejudice of the partnership creditors.

3. **Partnership:** CONTRACT FOR BUILDING COURT HOUSE: FIRM ASSETS: RIGHTS OF LABORERS AND MATERIAL-MEN. A and B were partners and had a contract for the construction of a· court house for Butler county. During the progress of the work the partnership was dissolved, it being agreed that A should complete the court house and receive for himself any profits accruing thereon. He gave a bond to B to indemnify B against liabilities arising out of the court house contract. B agreed that A might use the firm name in completing the court house.

---

* A rehearing has been allowed.

Thereafter A borrowed money which he used in completing the court house. The money was borrowed on a note signed by A individually and indorsed by C and D. To secure them A made in the firm name an order upon the county directing the payment to C and D of fifteen per cent of the contract price which was by the contract reserved until the court house was finished. It did not appear that C and D indorsed the note on the credit of the firm of A and B or on the faith that the money would be used in the building. Thereafter A and B gave orders against the same fund to various persons who had performed work or furnished material for the building. C and D were compelled to pay A's note. *Held*, That the finding of the trial court that the debt from A to C and D was the individual debt of A was in accordance with the evidence; that as between A and B, the county, and laborers and material-men the fund was partnership assets, and that the laborers and material-men were entitled to be paid therefrom prior to C and D.

APPEAL from the district court of Butler county. Heard below before WHEELER, J.

*George P. Sheesley, R. S. Norval,* and *George W. Lowley,* for appellants, cited: 1 Bates, Partnership, sec. 559; 2 Bates, Partnership, secs. 679, 707, 824; *Warren v. Martin,* 24 Neb., 273; 3 Pomeroy, Equity Jurisprudence, secs. 1280, 1283.

*Leese & Stewart,* also for appellants.

*Steele Bros., Evans & Hale, M. A. Hall,* and *Frick & Dolezal, contra:*

The assets of an insolvent partnership are a trust fund for the payment of partnership creditors. (*Till's Case,* 3 Neb., 261; *Roop v. Herron,* 15 Neb., 73; *Caldwell v. Bloomington Mfg. Co.,* 17 Neb., 489; *Rothell v. Grimes,* 22 Neb., 526; *Smith v. Jones,* 18 Neb., 481, *Banks v. Steele,* 27 Neb., 138.)

A surviving partner, or a partner who succeeds to the business of a firm for the purpose of completing and winding up its affairs, may pledge property to secure partnership

debts, but such partner cannot enter into a contract by which partnership assets are diverted, or by which an additional liability would be created against the estate of a deceased or retiring partner. (*Holland v. Fuller*, 13 Ind., 195; *Tiemann v. Molliter*, 71 Mo., 512; *Hayden v. Cretcher*, 75 Ind., 108; *Bank of South Carolina v. Humphreys*, 1 McCord [S. Car.], 388; *Cotton v. Evans*, 1 Dev. & B. Eq. [N. Car.], 284; *Veale v. Hassan*, 3 McCord [S. Car.], 278; *Lee v. Stowe*, 57 Tex., 444; *Kendall v. Riley*, 45 Tex., 20; *Dowzelot v. Rawlings*, 58 Mo., 75; *Bank of Port Gibson v. Baugh*, 9 S. & M. [Miss.], 290.)

The claim of appellants is a new obligation. It is one existing in favor of a creditor who ₁was such at the time of dissolution. This new obligation and liability Chidester had no right to incur, even if he had undertaken to do so in the firm name. (*Hayden v. Cretcher*, 75 Ind., 108; *Bowman v. Blodgett*, 2 Met. [Mass.], 308; *Bank of Port Gibson v. Baugh*, 9 S. & M. [Miss.], 290; *Dowzelot v. Rawlings*, 58 Mo., 75; *Rice v. McMartin*, 39 Conn., 573; *Sutton v. Dillaye*, 3 Barb. [N. Y.], 529; *Cotton v. Evans*, 1 Dev. & B. Eq. [N. Car.], 284; *Veale v. Hassan*, 3 McCord [S. Car.], 278; *Van Doren v. Horton*, 19 Hun [N. Y.], 7; *Lee v. Stowe*, 57 Tex., 444; *Kendall v. Riley*, 45 Tex., 20; *Roots v. Mason City Salt & Mining Co.*, 27 W. Va., 483.)

It was the moral duty of the county, and the legal duty of Barras, to see that the labor and material creating the fund was paid out of it. (*Sample v. Hale*, 34 Neb., 220.)

Appellees also made reference to the following cases: *Bennett v. Buchan*, 61 N. Y., 222; *Robbins v. Fuller*, 24 N. Y., 570; *Van Doren v. Horton*, 19 Hun [N. Y.], 7; *McClelland v. Remsen*, 23 How. Pr. [N. Y.], 175; *Thursby v. Lidgerwood*, 69 N. Y., 198.

IRVINE, C.

In 1889 William J. Chidester and C. F. Barras were copartners under the name of Chidester & Barras. In that

year they entered into a contract with Butler county for the
construction of a court house, for which they were to receive
$47,700. The contract provided for the payment to Chid-
ester & Barras each month of eighty-five per cent on ma-
terials furnished and labor performed during the month,
the remaining fifteen per cent to be paid after the work
was completed. Some time after this contract was entered
into work was begun on the court house and continued
by Chidester & Barras until October 22, 1890, when the
copartnership was dissolved. The terms of the dissolution
were evidenced by several instruments. By one of these
Barras agreed that if Chidester should give him a good and
sufficient bond to hold him harmless against all loss or
damage for which Chidester & Barras might become liable
for any failure, fraud, or neglect upon their part in and
about the construction of the court house, or for any loss
for work, labor, or material furnished, or for any failure on
the part of Chidester to pay for labor or material used in
the construction of the court house, then Barras would
waive all claims for any profit which might accrue in the
construction of the court house; and Barras further agreed
"that the said Chidester shall use the firm name in and
about the construction of said court house." Another in-
strument is the bond referred to. A third instrument is an
agreement of dissolution, whereby all unsettled business
was to be settled as soon as practicable, and the profits or
loss shared equally, and Chidester, in consideration of the
relinquishment by Barras of all claims to any profit aris-
ing from the court house contract, was to obtain an addi-
tional surety on the indemnity bond to Barras. Another
instrument is a notice of dissolution signed by both partners
and published at the time. This notice recited that the
court house contract was to be carried out by Chidester;
that he was authorized to receive all payments, and that he
was responsible for all bills for labor and material per-
formed and furnished, and that Chidester was to use the

12

firm name to complete the building, and Barras was not to. use the firm name in any future transactions. A still further instrument is a receipt by Barras from Chidester for $150, in full for all claims on the court house contract.

From these instruments it is clear that it was the intention of the parties to effect a dissolution as of October 22, 1890, so far as practicable; that Barras received $150 in lieu of other demands on account of the court house, and Chidester undertook to indemnify him from liability on account of that contract. It is also clear that between the partners it was understood that Chidester should proceed alone with the work. But it is equally clear that Chidester and Barras recognized the fact that as to third persons their existing contract liabilities could not be affected, and so it was expressly agreed that Chidester might use the firm name in the fulfillment of the court house contract. Chidester proceeded with the work, and in December induced Perkins and Spelts, the plaintiffs, to sign as joint makers with him a promissory note, to the order of the Columbia National Bank of Lincoln, for $4,000. This note was discounted by the bank and the proceeds placed to Chidester's credit individually and not to the credit of Chidester & Barras. Chidester testifies that his object in obtaining this money was to use it on the court house contract, and the evidence shows that nearly all of it was so used. At the time this note was made Chidester delivered to Perkins & Spelts the following instrument:

"*To the Honorable Board of Supervisors and County Treasurer of Butler County, Nebraska:* Please pay to B. O. Perkins and L. Spelts all of the fifteen per cent now due and which will be due us on the court house contract and this shall be your receipt for same said 15 per cent, being $7,155. Dated at David City, Neb., this 9th day of Dec., in the year 1890.          CHIDESTER & BARRAS,

"By W. J. CHIDESTER."

It does not appear that there was any agreement between Chidester and the plaintiffs that the money should be used for the court house, nor that they supposed that they were dealing with the firm of Chidester & Barras in signing the note. It does not even appear that they were informed what Chidester's purpose was in procuring the loan. The most that can be said is that Perkins at least evidently relied largely on the assignment of the fifteen per cent reserve fund to secure him in his suretyship. This note was once or twice renewed and was finally, on July 6, 1891, paid by Perkins and Spelts. On December 30, 1890, Perkins and Spelts had filed the assignment with the county clerk of Butler county. The court house was completed and accepted about May 28, 1891, and there was found to be due from the county to Chidester & Barras $8,344.82. At the time the work was completed a number of orders were given against this fund in favor of persons who had performed labor or furnished material for the court house. Some of these orders were signed by both Chidester and Barras, some of them were signed in the firm name by Barras alone. There is evidence sufficient, at least to sustain the finding to that effect by the district court, that at the time of the dissolution Chidester & Barras were insolvent. Perkins and Spelts, after paying the note, brought this action against Butler county, Chidester, and the laborers and material-men praying that they be decreed entitled to payment of the money due from Chidester from the fund in the hands of the county, prior to the payment of the other parties.

The county answered, admitting the contract with Chidester & Barras, the completion and acceptance of the court house, and that there was due thereon the amount already stated. It then pleaded the presentment to it of the various orders, and prayed the adjudication by the court of the respective claims of the plaintiffs and of the laborers and material-men, and the protection of the court in

the disbursement of the money. The numerous laborers
and material-men filed answers, putting plaintiffs' claims
in issue, and cross-petitions setting up claims in themselves
to the fund. The court found that the moneys in the
hands of Butler county were partnership assets of Chides-
ter & Barras, and that the laborers and material-men
were creditors of the firm, and the plaintiffs were individ-
ual creditors of Chidester; that Chidester & Barras were
insolvent. The court then found the amount due each of
the laborers and material men, classifying their claims in
groups, but ordering the payment of all before the pay-
ment of any money to the plaintiffs. From this decree the
plaintiffs appeal.

There is but little controversy as to the facts, but the
discussion of law has taken a wide range. We think a
few considerations are sufficient to resolve the case to a single
question, or group of questions. In the first place, what-
ever may have been the law formerly, and however such a
transaction may be regarded now in a court of law, it is
settled that in equity an assignment of moneys not yet due
or earned, but which are expected to be earned in the fu-
ture under an existing contract, is binding and will be en-
forced. (*East Lewisburg Lumber & Mfg. Co. v. Marsh*, 91
Pa. St., 96; *Ruple v. Bindley*, 91 Pa. St., 296; *Taylor v.
Lynch*, 5 Gray [Mass.], 49; *Payne v. Mayor*, 4 Ala., 333;
*Greene v. Bartholomew*, 34 Ind., 235; *Spain v. Hamilton's
Administrator*, 1 Wall. [U. S.], 604.) The principle of
these cases has been fairly recognized by this court. (*Code v.
Carlton*, 18 Neb., 328.) The recent case of the *Union
P. R. Co. v. Douglas County Bank*, 42 Neb., 469, is not
contrary to this rule. In that case the assignment was held
subject to the claims of employes because the assignment was
construed as an assignment of the contract *cum onere*, and
not merely an assignment of moneys to be earned in the
future under the contract. In determining priorities as
between different assignments of this character, the general

rule is that that assignment which is first brought to the
notice of the debtor has priority. Several of the above
cases illustrate this principle. The assignment to Perkins
and Spelts was undoubtedly founded on a valuable consid-
eration, and in view of the principles already stated would
be entitled to priority over the claims of the cross-petition-
ers, did they emanate from the same source and on the
same account. It is suggested in argument that the cross-
petitioners are entitled to priority because their work con-
tributed to the creation of the fund, but this view is not
tenable. Our mechanic's lien law does not apply to the
construction of a court house. (*Ripley v. Gage County*, 3
Neb., 397; *Sample v. Hale*, 34 Neb., 220; *Lyman v. City
of Lincoln*, 38 Neb., 794.) In the absence of a statute
creating such a lien one obtains no specific lien upon a
fund merely because his industry assisted in creating it.

The principal argument in favor of appellees is that the
indebtedness to the plaintiffs was the individual indebted-
ness of Chidester, and that the assignment of the moneys
accruing to Chidester and Barras to secure this individual
debt of Chidester was inoperative as against the creditors
of the partnership. It is certainly well settled in the juris-
prudence of this state that when a partnership is dissolved
or is insolvent its assets will in a court of equity be treated
as a trust fund for the payment of partnership creditors,
and that one partner or the creditors of one partner will
not be permitted to divert the assets to the prejudice of the
partnership creditors. (*Till's Case*, 3 Neb., 261; *Bowen v.
Billings*, 13 Neb., 439; *Roop v. Herron*, 15 Neb., 73;
*Caldwell v. Bloomington Mfg. Co.*, 17 Neb., 489; *Smith v.
Jones*, 18 Neb., 481; *Rothell v. Grimes*, 22 Neb., 526;
*Banks v. Steele*, 27 Neb., 138; *Tolerton v. McLain*, 35
Neb., 725.) The case of *Roop v. Herron*, *supra*, would,
indeed, be very closely in point and decisive in favor of
the appellees here, were it not that in the former case the
indebtedness contracted by the individual partner was very·

clearly his own debt, and was not used in any manner on behalf of the firm.

We, therefore, have two rules well established. The first that the assignment to the plaintiffs was one which, in equity, is valid, and would have priority over the claims of the cross-petitioners if all the claims emanated from the same source, and upon the same account. Second—That one member of an insolvent partnership, especially after dissolution, may not dispose of partnership property to the exclusion of partnership creditors. This brings us to the crucial questions in this case. Was the indebtedness to plaintiffs the individual debt of Chidester? Do the cross-petitioners occupy the position of partnership creditors? and, finally, is the fund in dispute partnership assets?

We have no doubt in resolving the last two questions. It was beyond the power of Chidester and Barras to dissolve their partnership in such a manner as to affect the rights of the county, or those of strangers, under the court house contract. This fact they recognized and did not seek to combat. While they arranged between themselves a special settlement of the matters growing out of this contract, it was recognized that Barras' liability to third persons continued and he took a bond to indemnify him therefrom. He also expressly authorized Chidester to use the firm name in prosecuting the contract. For the purpose of completing existing contracts a partnership continues after it is otherwise dissolved; and while the partners may change their relations as between themselves in regard to such contracts, their relations to third persons continue the same. We have no doubt that the fund in dispute, notwithstanding the agreement of Chidester and Barras as to its disposition, remained as between them, the county, and the cross-petitioners partnership assets.

The remaining question is one of greater difficulty. The appellees argue that the loan to Chidester cannot be treated as a partnership transaction because one partner,

after dissolution, can make no new contract; but we have seen that Chidester was given power to complete the existing court house contract, and incidentally, by necessary implication, the power to make new contracts with strangers for the purpose of completing that contract.

In *Mason v. Tiffany*, 45 Ill., 392, George B. Tiffany & Co. made a contract with Mason and others for the manufacture of a number of boilers. Before their delivery Tiffany died. The surviving partners, who continued the business in the old name, received the boilers and in the firm name executed notes for the purchase price. It was held that the estate of Tiffany was liable upon the notes because they were merely given in the fulfillment of a contract made before the dissolution.

In *Butchart v. Dresser*, 10 Hare [Eng.], 453*, A and B were partners as commission brokers, and also bought and sold shares on their own account. The partnership was dissolved, and thereafter A deposited with certain bankers shares which the firm before dissolution had contracted to buy, and obtained advances to pay for the shares on the security of the deposit, signing a power in the name of the firm to sell the shares if the debt was not paid in a certain time. It was held that in the completion of the contract made before dissolution one partner had the power to borrow in the firm name and pledge the partnership assets to secure payment. This case was affirmed on appeal. (*Butchart v. Dresser*, 4 De Gex, M. & G. [Eng.], 542.)

We are aware that in *Levi v. Latham*, 15 Neb., 509, this court held that one partner in a non-trading partnership cannot bind his copartner by a promissory note made in the firm name, unless he has express authority therefor, or the giving of such note is necessary to the carrying on of the business, or is customary in similar partnerships; but we think this case would fall within one of the exceptions. If the borrowing of this money was necessary to complete the court house contract, Chidester would have authority to

borrow it and pledge the firm's credit for its payment.
We hold, therefore, that under the terms of the dissolution
and the facts of the case Chidester had power to borrow
money to complete the court house on the credit of the
firm.   The question is, did he do so?   The note was
signed by Chidester alone, and, as we have said, there is no
evidence that the plaintiffs, in becoming sureties, relied on
the use of the money in building the court house.   They
did rely on the assignment of the fund, but not on the per-
sonal credit of the partnership.

In *Habig v. Layne*, 38 Neb., 743, one partner purchased
materials to be used in the construction of a building
which was being erected by the partnership.   The contract
for the material was in writing and in the name of the in-
dividual partner.   It was held that it was a question of
fact for the determination of the jury whether the contract
was that of the individual or of the firm.

In *Holland v. Fuller*, 13 Ind., 195, A and B had in-
dorsed the paper of the firm C and D.   C died.   A and B then
indorsed the individual paper of D on his own security
alone.   With the proceeds of this individual paper D paid
off the partnership paper on which A and B were liable.
D failed and assigned to A and B certain property, includ-
ing assets of the late firm of C and D.   It was held that the
assignment of these assets was void and that A and B could
not be substituted in the place of the original creditors of
the firm.   This case is authority for holding that the mere
fact that Chidester used the proceeds of the note in the
construction of the court house would not entitle the plaint-
iffs to rank as partnership creditors.

In *Hayden v. Cretcher*, 75 Ind., 108, after the dissolu-
tion of a partnership, one partner, who had agreed to pay
the debts of the firm, borrowed money to pay the firm
debts and executed a note in the firm name.   The payee of
the note did not lend the money on the credit of the firm
or on that of the retiring partner.   He advanced the

money before the note was executed and did not know that
the note was to be in the firm name.   It was held to be
the individual debt of the borrowing partner, and the fact
that the money was used to pay the firm's debts did not
render the retiring partner liable.

We think, therefore, that the plaintiffs can claim noth-
ing merely because the money was used for the purpose of
the partnership.   The question is not what was the money
used for, but upon whose credit was plaintiffs' indorsement
obtained.   The transaction was with Chidester; they knew
of the dissolution; they signed his individual note and in
their petition in this action they recite that they signed the
note "for the purpose of aiding the said Chidester to per-
form said contract  *  *  *  and thereby enable said de-
fendant to procure a loan."   The petition, then, in alleg-
ing the payment by the plaintiff of the note says:
"Whereby the said W. J. Chidester became and is now
indebted to the plaintiffs," and the prayer is for judgment
against Chidester.   The plaintiffs did not even make Bar-
ras a defendant.   He came in by a petition of interven-
tion.   We think the finding of the trial court that this
was the individual debt of Chidester is supported by the
evidence.   This being true, Chidester had no right, to the
exclusion of partnership creditors, to pledge partnership
funds to secure the debt, and the assignment was void as
to the partnership creditors.

The appellants place much reliance upon the case of
*Warren v. Martin*, 24 Neb., 273.   We do not think the
case in anywise conflicts with the view we have taken.
All that case decides is that one partner may pay his indi-
vidual debt out of the funds of the partnership when his
interest justifies it, and that his creditor receiving partner-
ship funds in payment will be protected either by the
acquiescence of the other partners, or by ignorance of the
fact that the partner paying the money was not authorized
to pay it out of that fund.   In this case there is no pre-

tense that the relations of the parties were not understood by the plaintiffs. They chose to become sureties for the individual indebtedness of Chidester; they knew the partnership had been dissolved except for the purpose of completing this contract, and they were bound to know that Chidester could not transfer to them partnership assets to secure his individual debt to the prejudice of partnership creditors.

JUDGMENT AFFIRMED.

NORVAL, C. J., not sitting.